## HURD *v.* STATE.*

### (In Banc. Dec. 15, 1924.)

#### [102 So. 293. No. 24147.]

1. HOMICIDE. *Evidence of commission of felony by accused in prosecution for murder for killing officer attempting to arrest parties committing it, admissible.*

In the trial of a person for murder for the killing of an officer attempting to arrest the parties who had committed a robbery, evidence of the commission of such felony by the defendant and his companions is admissible, where it tends to show that the defendant was present at the time and place of the killing, and tends to establish the identity of the defendant as a participant in the killing; and it is also admissible as tending to show motive for resisting arrest, and that the defendant and his companions were confederated together for the felonious purpose of robbery and resistance to arrest, and that in furtherance of this common design the officer was killed by one of the conspirators, in which case the killing of the deceased, by whichever of them done, would be the act of each and all of them.

2. HOMICIDE. *Evidence held to sustain conviction for murder of officer while attempting arrest of parties who had committed robbery; refusal of requested instruction that defendant could not be convicted of murder unless he fired fatal shot held not erroneous.*

Evidence discussed, and *held,* that it was sufficient to warrant the jury in finding that the defendant was present at the time and place of the killing, and that he and his companions were confederated together for the purpose of robbery and resistance to arrest, and that in furtherance of this common design the deceased was killed by one of the conspirators, and under such evidence it was proper to refuse an instruction to the jury that it could not convict the defendant, unless the state had proven beyond all reasonable doubt that he fired the shot or shots that caused the death.

*Headnotes 1. Homicide, 30 C. J., section 444; 2. Homicide, 30 C. J., sections 548, 557.

APPEAL from circuit court of Hinds county.

HON. W. H. POTTER, Judge.

Lester Hurd was convicted of murder, and he appeals. Affirmed.

*J. H. Garth, Jr.,* for appellant.

First, the court erred in permitting the state to introduce evidence to show in detail that the crime of robbery had been cimmitted near Vicksburg, and in Warren county several hours prior to the time Marshal Lancaster was killed. This evidence was prejudicial to the defendant, and had no connection or no bearing whatever upon the crime of murder of the Marshal Lancaster in Hinds county, and forty to sixty miles away from where Lancaster was killed, and for which this appellant was being tried. There was not and could not have been any connection of the crime of robbery and the crime of murder under this evidence and the circumstances in this case.

Second, the evidence clearly shows that this appellant was on the opposite side of the railroad track from where Lancaster, the deceased was, at the time of his death and several hundred feet away at the time he was killed, and that this appellant was not and could not have been even present at the time of his killing, as is shown by the testimony of the witness, Hamilton, who testified that after he heard the shots fired by Mr. Moore, that he and Lancaster were on the opposite side of the railroad track and train, and that he, Hamilton, undertook to climb up in the box car, and was shot while so doing, and that he then crawled under the train and after crawling under the train, and on the opposite side of the track from where Lancaster was, he heard quite a number of pistol shots, and that about this time Mr. Moore crossed the track and went to where the pistol shots appeared to have been fired, and he there found Mr. Lancaster, deceased, dead with his pistol near him, containing empty shells, or shells nearby Mr. Lancaster, that apparently came out of his pistol, and it cannot be said that it is shown beyond all reasonable doubt that this appellant fired the fatal shot or shots that caused the death of Mr.

Lancaster, and the strongest circumstances or inference that could be drawn from this evidence in this case is that he was present at the time of the killing. It is not shown or intended that appellant aided or abetted in the commission of the crime, and of course, even if he was present he would have to do something to incite, encourage or assist the actual perpetrator in the commission of the crime, merely being present at the commission of a crime, even with the intention of assisting in the commission, if necessary, does not make one an aider or an abettor thereof, unless his intention to render such assistance be known to the perpetrator of the crime. *Crawford* v. *State,* 97 So. 534.

*E. C. Sharp,* Assistant Attorney-General, for the state.

Only three questions are presented for determination by this court as we understand it: First, should the court have permitted the state to introduce evidence of the robbery which occurred an hour or two prior to the killing and for which crime the officers were attempting to arrest appellant; second, whether or not the testimony is sufficient to establish the identity of defendant as a participant in the killing; and, third, were the instructions asked by appellant and refused by the court properly refused.

"Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish, first, motive; second, intent; third, the absence of mistake or accident; fourth, common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; fifth, the identity of the person charged with the commission of the crime on trial." Wharton's Criminal Evidence (9 Ed.), sec. 48. It is the contention of the state that it was competent to

show the motive and the identity of the person charged with the murder. *People* v. *Molineux,* 168 N. Y. 264, 64 L. R. A. 193; *People* v. *Rogers,* 71 Cal. 565, 12 Pac. 679; *O'Brien* v. *Commonwealth,* 24 Ky. 2511, 74 S. W. 666; *Whitney* v. *Commonwealth,* 24 Ky. 2524, 74 S. W. 257; *State* v. *Barrett,* 40 Minn. 65, 41 N. W. 459.

Does the evidence in this case sufficiently identify the appellant as a participant in the murder of Lancaster? The jury answered this question in the affirmative. The second instruction for appellant which was refused is so clearly incorrect that we do not deem it necessary to discuss it at length. *Dean* v. *State,* 85 Miss. 40.

Cook, J., delivered the opinion of the court.

In the circuit court of the Second district of Hinds county the appellant, Lester Hurd, was convicted of murder, and sentenced to be hanged, and from this conviction and sentence he prosecuted this appeal.

To establish the guilt of the appellant the state first offered the testimony of two negroes, Roosevelt Richardson and Walter Johnson, who testified, in substance, that just before dark on the day of the killing they boarded an east-bound freight train of the Alabama & Vicksburg Railway Company just as it was leaving the Vicksburg yards; that shortly thereafter this appellant and two companions also boarded the train; that after the train had traveled several miles toward Jackson the appellant came over the train to the car on which the witnesses were riding and asked them for a match; that they had no matches, but, as one of them was smoking, he gave the appellant a light; that the appellant then returned to the place where his companions, were riding, and shortly thereafter the three together came onto the car on which these two witnesses were riding, and after some conversation suddenly covered them with pistols and proceeded to rob them, securing from the person of

Roosevelt Richardson the sum of nine dollars and thirteen cents and from Walter Johnson twenty dollars in money, a small pistol, and a jug of whiskey. They further testified as to the details of this robbery, and that each of their assailants was armed with a large pistol; that when they reached the suburbs of the town of Edwards their assailants forced them to leave the train, the train proceeding east toward Jackson; and that they immediately reported the robbery to the marshal of the town of Edwards.

This east-bound freight train proceeded to the town of Bolton, where it stopped on a side track to await the arrival of a west-bound passenger train, and J. W. Moore, a constable residing at Bolton, testified that about the time this train reached Bolton he received a telephone message from the marshal of Edwards informing him of this robbery and giving him a description of the parties who had committed it, and requesting him to meet this train and arrest them; that he immediately communicated this information to Ollie Lancaster, the marshal of Edwards, and together they proceeded westward down the railroad track to the point where this train was standing; that when they reached the locomotive they separated, Lancaster going in the north side of the train, and the witness, Moore, on the south side; that he, Moore, met a Mr. Hamilton and another man, and was thereby delayed a few moments; that Hamilton wanted to go with him, but that he appeared to be somewhat intoxicated, and he told him to go on to town; that he, Moore, then proceeded along the south side of the train, and when he had gone about half the length thereof there was a fusillade of pistol shots on the north side of the train about one car length ahead of him, the number of shots being estimated by him at from fifteen to twenty and the number of pistols firing at about three; that he ran forward for the purpose of crossing to the north side of the train at the first opening between the

cars, but that about the time he reached this opening some one crawled out from under the train a short distance in front of him; that this party, having something in his hand which appeared to be a pistol, got onto his feet, and started to run south directly away from the train; that he Moore, ordered this party to halt, but he did not do so, and he then fired twice at him, the second shot bringing the fleeing man to the ground; that he then heard some one approaching him from the rear, and he wheeled around and covered this man with his gun, but at once recognized him as the man, Hamilton, whom he had ordered not to come down there; that he pushed this man back and directed him to go back to town, and he started in that direction; that he, Moore, then started in pursuit of the man that he had wounded, but had only proceeded a few steps when he heard three shots behind him; that he turned and started back towards the place where these last shots were fired, but before he reached there Hamilton called to him that he had been shot, and that he discovered Hamilton between the two box cars at the first opening east of the point where he had left him; that Hamilton was wounded, and he carried him up the train toward town until he met another white man who, at his request, carried Hamilton to a doctor; that he, Moore, then came back to the point where Hamilton had been wounded, and there crossed over the train to the north side thereof; that when he got on the north side of the train he saw no one, but after some search he found the marshal, Ollie Lancaster, dead on the ground, several bullets having taken effect in his body.

He further testified that he then went to the place where the man at whom he had shot fell, and there found blood stains, and tracks indicating that the man had crawled away on his hands and knees, sometimes crawling on his hands and one knee, and at other places on both knees; that he followed these blood stains and

tracks about two hundred yards to a bridge on a public road south of the railroad; that he traced these blood stains and tracks under this bridge, and to a point where they came out from under the bridge, but there lost the trail.

The state next offered the testimony of Yancy Cook and his negro chaffeur, who testified, in substance, that they were driving into Bolton between eleven and twelve o'clock on the night of the killing; that when they crossed this bridge about one hundred seventy-five or two hundred yards south of the place where the shooting occurred they found the appellant lying in or crawling across the road; that his leg was shot and broken; that he said that trainmen had put him off a fireight train and had shot him, and that he wanted to go to Jackson; that they took the wounded man in the car, and, finding a large crowd in the town of Bolton, they brought him on through to Jackson and delivered him to the police at the city jail. They further testified that when they picked up the appellant he had removed one shoe and had a small pistol concealed in this shoe, and that they took the pistol from him and delivered it to the officers. The witness Walter Johnson identified this pistol as the one which was taken from his person by the appellant at the time of the robbery at Edwards. The witness Roosevelt Richardson testified that on the day before the trial the appellant called him to the jail and talked to him about having robbed him, and said, "Don't breathe I had a pistol or anything." The man, Hamilton, who was wounded at the scene of the shooting, was not introduced as a witness.

At the conclusion of the testimony for the state the appellant filed a motion to exclude the evidence and direct a verdict of not guilty. This motion was overruled, and thereupon the appellant, without introducing any evidence whatever, rested his case.

In the brief and argument of counsel for the appellant three grounds for a reversal are presented: First, that

the court erred in admitting evidence of the robbery committed by the appellant and his companions an hour or two prior to the killing and for which crime the officers were attempting to arrest the appellant; second, that the testimony is insufficient to establish the identity of the appellant as a participant in the killing, and, consequently, that it was error to refuse the peremptory instruction requested by him; and, third, that it was error to refuse an instruction requested by the appellant to the effect that the jury could not find the appellant guilty unless the state had proven beyond all reasonable doubt that he fired the fatal shot or shots that caused the death of the officer, Lancaster.

While it is the general rule that, in a prosecution for crime, evidence which shows or tends to show the commission, by accused, of other separate and distinct crimes is not admissible, there are certain well-established exceptions to this rule. One well-recognized exception to this rule is that evidence of other crimes committed by the accused is relevant to prove his identity, and on a trial for murder for the killing of an officer or person attempting to arrest the defendant and his companions for the commission of a robbery evidence of the commission of such felony by the defendant and his confederates is competent as tending to show that in connection with their criminal purpose they had a motive for resisting arrest, and that, being confederated together for the felonious purpose of robbery and resistance to the civil power of the state, the killing of the deceased, by whichever of them actually done, was the act of each and all of them. For this purpose the evidence that the appellant and his companions committed a robbery on the train a short while before it reached the point where the officer attempted to arrest them and where the killing occurred was admissible, as well as for the purpose of showing that the officers were justified in going to the place for the purpose of arresting the participants in this robbery, and as tending to show that the appellant,

with his confederates, and armed with a pistol, was on the train and present at the time and place of the shooting, and had an opportunity to participate therein.

The applicability of this doctrine to homicide cases is stated in 16 C. J. 600, as follows:

"The general rule that evidence which shows, or tends to show, the commission, by accused, of other separate and distinct crimes is not admissible is applicable in homicide cases. The exceptions to the general rule are also applicable, and evidence is not to be excluded because it shows, or tends to show, the commission of other offenses where it is otherwise admissible, as where it tends to show that the deceased was actually slain by violence, or where it points to, or tends to identify, accused as the slayer of deceased, or where it shows or tends to show malice, motive, or a particular intent."

For a full discussion of these exceptions to the general rule see, also, the cases of *People* v. *Pool,* 27 Cal. 572; *State* v. *Morgan,* 22 Utah, 162, 61 P. 527, and *People* v. *Molineux,* 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193, and notes appended to the report of this case in L. R. A.

The next contention of the appellant is that the evidence is not sufficient to sustain the conviction, and that the peremptory instruction requested by him should have been granted. We think this contention is without merit. The evidence of the robbery committed on the train a short while before the shooting tended to show that the appellant and his confederates were on the train at the time and place of the shooting, and that they were armed with pistols, and this in connection with the fact that the officers were greeted with a fusillade of shots when they approached the train, the shots coming from more than one pistol; that immediately following the shooting a man was seen crawling from under the train at a point about where the shooting occurred and where the body of the deceased was later found; that this man was shot down by an officer as he was fleeing

from the scene, and by the imprint of the hands and knees in the soft soil, as well as by a trail of blood, was later traced to a nearby bridge; that soon thereafter the appellant was found lying in or crawling across the road near this bridge, his leg being broken by a pistol shot, together with the fact that he was positively identified as being one of the party who had committed the robbery on the train a short while before, and that he had in his possession a pistol which was identified as one which had been taken from the person of one of the victims of the robbery, was sufficient to warrant the jury in finding that the appellant was present at the time of the shooting, and that he and his companions were confederated together for the purpose of robbery and resistance to arrest, and that in furtherance of this common design the officer was killed by one of the conspirators, and, such being the case, the killing of the deceased, by whichever of them actually done, was the act of each and all of them.

What we have said in reference to the sufficiency of the testimony renders unnecessary a discussion of the instruction requested by the appellant and refused by the court. By this instruction the court was asked to instruct the jury that it could not convict the defendant unless the state had proven beyond all reasonable doubt that he fired the shot or shots that caused the death of Lancaster, and, since we hold that under the evidence the jury was warranted in finding that the appellant and his companions were confederated together for the purpose of robbery and resistance to arrest, and that the killing was done in furtherance of this common design by one or more of the conspirators, this instruction was manifestly erroneous.

We do not think there is any reversible error in the record, and consequently the judgment of the court below is affirmed, and Friday, January 30, 1925, is fixed as the date for the execution of the sentence.

*Affirmed.*