## CRISS v. STATE.

(Division B. June 2, 1947.)

[30 So. (2d) 613. No. 36511.]

 

**Stone & Stone**, of Coffeeville, for appellant.

**Greek L. Rice,** Attorney General, by **Geo. H. Ethridge,** Assistant Attorney General, for appellee.

**Alexander, J.,** delivered the opinion of the court.

Appellant was convicted of the murder of one Dan Gaines, and from a judgment and sentence of life imprisonment, he appeals.

Briefly stated, appellant admits killing deceased with a shortgun, but seeks justification in the imminent peril to a co-defendant, Sam Spearman, whom allegedly he was seeking to protect. Testimony for the State showed that on the evening of the homicide, appellant and Spearman were looking for deceased. Spearman carried the shotgun. Deceased was finally located at the home of one Richard Parker, whereupon Spearman pushed the door open and, catching deceased by the hand, led him outside. Almost immediately, a shot was fired. Deceased, mortally wounded, sought readmittance, and was assisted inside. Although the door was then closed and fastened, appellant forced the latch and came in bearing the gun and threatening to shoot deceased again. We need not expand our recital of the facts except to advert to the plea of justification.

Appellant testified that the gun was brought to Parker's house by Spearman, and although appellant was paying little attention to Spearman's disposition of the weapon, he was aware that it had been set down on the ground at the edge of the porch and about two feet from appellant.

The overt act asserted to be a threat to Spearman, whose welfare appellant suddenly took to heart, is thus described by the latter: "He (Spearman) told him he wanted to see him, and Dan told him he would kill him and he reached for his pocket and pulled something out, I don't know what it was, and I picked up the gun and shot." This version is to be weighed against the testimony of an eyewitness that Spearman was still holding deceased by the hand when the shot was fired, and against the testimony of the sheriff that appellant had previously explained that he shot deceased "because he had heard the boy was hot at him."

The reasoning powers of the jury were undoubtedly resorted to in appraising the celerity with which appellant analyzed the situation as imminently perilous to his associate, and the mental and physical agility displayed

in locating and bringing into play the weapon which Spearman had, with or without design, placed upon the ground and against the porch. Realizing that the necessities of the occasion limited his defensive operations to the brief season during which deceased, with the advantages of an earlier start, could reach for his pocket, and whose complete functioning he was bound to forestall, the jury may well have reacted in astonishment that one upon a peaceful mission could so suddenly summon dormant faculties to his aid, even under the stimulus of a call to serve as his brother's keeper. It may have been found relevant that no weapon was discovered upon or near deceased, and that he was clad in a "sport shirt," without a coat.

A motion for continuance was overruled. Its basis was the absence from the State of the purported witness, Lollar. It was alleged by the motion that the absent witness "can prove that on the day of the homicide, and only shortly before it occurred the deceased, Dan Gaines, made a deadly assault with a deadly weapon on Sam Spearman, the co-defendant of petitioner, and threatened to kill the said Sam on sight, and struck and wounded Sam Spearman, and would have killed him if not prevented by others."

In this connection, we must consider the testimony of appellant himself who stated repeatedly that he knew of no trouble between the deceased and Spearman. It is clear, therefore, that if there had been any threats against the latter, appellant was not aware of them, and did not take them into account in interpreting the alleged overt act of deceased. Moreover, the trial judge was justified in overruling the motion by a consideration of the double aspect which the proposed testimony assumed, that is to say that appellant, in view of previous difficulties and threats, had a purpose of his own in arming himself and ferreting out deceased.

It is next assigned that it was error to admit a confession made to the sheriff. To him, appellant admitted that

he killed deceased, and as adverted to, because he had heard that the deceased was "hot at him." Inducement by promises is alleged. We do not find any basis for displacing the ruling of the trial judge that the confession was voluntary. The assertions of a jailer and sheriff that he will attend to ordinary wants or needs consistent with official duty are not suspect. Moreover, the confession was made prior to the tender of these harmless and simple amenities. Failure to warn a prisoner that his statement might be used against him does not render the confession incompetent. Wohner v. State, 175 Miss. 428, 167 So. 622.

Lastly, the following instruction is attacked: "The Court further instructs the jury for the State, that malice is implied by law from the nature and character of the weapon used, and the deliberate use of a deadly weapon in a difficulty, not in necessary self defense, or not in necessary defense, or to save the unlawful taking of life, or great bodily harm to, a fellow human being, is in law, evidence of malice."

Although this instruction has been repeatedly given in homicide cases, we do not approve it. Actual malice is not a necessary ingredient of murder. All our statute requires in cases of this kind is a "deliberate design." Code 1942, Section 2215. Furthermore, it is a rare case where the existence of a presumption may be appropriately indicated in an instruction. Bridges v. State, 197 Miss. 527, 19 So. (2d) 738. See Miss. L. Jour., Vol. XVII, p. 45. In the case at bar, actual malice was shown by the purpose, violently expressed by appellant, to finish off deceased by a second shot. No reversible error is seem here.

Affirmed.