## TANNER v. STATE.

Jan. 5, 1953

No. 38571      14 Adv. S. 23      61 So. 2d 781

*Pershing B. Sullivan,* for appellant.

*Geo. H. Ethridge,* Assistant Attorney General, for appellee.

Kyle, J.

Rudolph Tanner was indicted, tried and convicted in the circuit court of Smith County on a charge of assault and battery with intent to kill and murder one Wesley Dickerson, and was sentenced by the court to imprisonment in the state penitentiary for a term of five years. From that judgment he prosecutes this appeal.

Dickerson testified that he was in his yard about 4:00 o'clock in the afternoon cutting firewood, when he was shot in the back with a bullet from a twenty-two rifle. The bullet entered the upper left side of the back, passed through the body and came to rest in the lower part of the breastbone. Dickerson's wife and his two daughters, Murdell and Dorothy Lou, were in the yard when the shooting occurred. Dickerson called to them to "get in the house" immediately and then ran into the house himself. According to the testimony of Dickerson and his wife, Dickerson was suffering intense pain, and a few minutes after the shooting his daughter, Murdell, who was the wife of the appellant and who was separated from him at the time of the shooting, left the house to call for help and to notify the sheriff, and two shots were fired over her head while she was in the yard. Mrs. Dickerson then ran out of the house with an automatic pistol and fired one shot toward the clump of woods from which the other shots seemed to have come. She testified that as she shot her pistol the appellant jumped up with his rifle and ran, and as she advanced toward the edge of the porch he shot her in the leg. Dickerson then fired four shots from the window. According to the testimony of Dickerson and his wife, thirty or thirty-five minutes elapsed between the time that Dickerson was shot at the woodpile and the time that his wife was shot in the leg.

Dr. R. B. Boykin testified that he examined Dickerson at his home soon after the shooting; and that he found that the bullet had entered Dickerson's body about half

way between the backbone and the right side of the left arm, and had passed through the lower part of the liver. Dickerson was treated at a local hospital, and was then carried to the Veterans' Hospital at Jackson, where he remained about two weeks. Dickerson testified that the defendant had shot four times in all, one time at him, two times at Dickerson's daughter, Murdell, and one time at Dickerson's wife.

W. L. Crumpton, the sheriff, testified that he was notified of the shooting soon after the shooting had occurred, and that he sent two of his deputies, Hooker Martin and Wilson Dickerson, a distant relative of Wesley Dickerson, to make an investigation. The defendant was arrested and placed in jail, and the morning after the arrest the sheriff called the district attorney on the telephone and requested him to come to Raleigh to assist in the investigation. The sheriff testified that after the district attorney arrived the defendant was brought from the jail to the courthouse and was questioned by the officers. The defendant told the officers that he did not know that Wesley Dickerson had been shot until he saw the ambulance going toward his home. The district attorney asked the defendant why that would cause him to think that Mr. Dickerson had been shot. The defendant hung his head, and the district attorney then asked him whether he wanted to tell the officers how it happened; and the defendant said "yes." The defendant then gave a detailed account of the shooting.

The defendant's attorney objected to the testimony relating to the alleged confession on the ground that the alleged confession had not been made freely and voluntarily and on the ground that the defendant had not been advised that his statement might be used against him. When the objection was interposed, the court ordered the jury to retire from the courtroom, and the court then conducted a preliminary inquiry for the purpose of determining whether the statement made by the

defendant to the officers had been made freely and voluntarily. The defendant's attorney subjected the sheriff to a vigorous cross-examination as to the voluntary nature of the alleged confession; and the defendant testified himself on that issue and gave his own version of the details of the conversation which he had had with the officers before making the alleged confession. The defendant made no claim that he had been threatened or mistreated by the officers in any manner, or that any promises had been made to him to induce him to make the statements that he had made to the officers; and after a vigorous cross-examination by the district attorney the defendant finally admitted that the only thing that the district attorney had said to him about making a statement was that it would be better for him to tell how it happened—"tell the truth about it."

The court found that the statements made by the defendant to the officers had been made freely and voluntarily, and the court overruled the defendant's objection to the admission of the testimony. The jury was then returned to the courtroom, and the sheriff related to the jury the statements which the defendant had made to the officers the morning after the shooting. The sheriff testified that the defendant told the officers that on the day of the shooting he procured a rifle and sixteen cartridges and went through the woods to Dickerson's house about 8:30 or 9:00 o'clock; that he remained there and watched the house until late in the afternoon; that he had plenty of chances to shoot, but that he was trying to get two together; that he shot Wesley Dickerson with the first shot; that he was standing behind some brushes, where Mr. Dickerson could not see him, when he fired the shot; and that Mr. Dickerson was stooped down cutting wood at the time he fired the shot. The sheriff stated that the district attorney asked the defendant whether he gave Dickerson any warning of any kind before he shot; and in answer to that question the de-

fendant pointed to the gun lying nearby and said, "I let that do the talking." The sheriff stated that the defendant told the officers that he was afraid the Dickersons would shoot him, and he wanted to get them first. The sheriff stated that the defendant said that he fired the next shot at Mrs. Dickerson, when she ran out of the front door trying to get help; that he did not want to shoot his wife, Murdell, and for that reason, when he fired toward her, he aimed above her head.

The sheriff testified that after the defendant had made the above mentioned statement to the officers, the sheriff told him that it would be better for him to make the statement in the presence of outsiders, and the defendant repeated the statement which he had made to the officers five or ten minutes later in the presence of J. B. Horn and Frank Myers.

Wilson Dickerson, the deputy sheriff, testified next and corroborated the testimony of the sheriff. J. B. Horn and Frank Myers testified also concerning the statement made by the defendant in their presence.

The defendant did not testify as a witness in his own behalf. But several witnesses testified as character witnesses for him.

The first point argued by the appellant's attorney on this appeal is that the court erred in overruling the appellant's objection to the admission of the testimony relating to the confession made by the appellant to the sheriff, the deputy sheriff and the district attorney the morning after the shooting, and repeated later in the presence of Horn and Myers. But we think that there was no error in the admission of the evidence relating to the confession. ▮▮ The testimony shows that no force or coercion was used by the officers in procuring the confession, and that the confession was made freely and voluntarily. And the court was amply justified in holding that the evidence relating to the confession was admissible. Keeton v. State, 175 Miss. 631, 167 So. 68;

Clark v. State, 209 Miss. 586, 48 So. 2d 127; Hinton v. State, 209 Miss. 608, 45 So. 2d 805; and Cooper v. State, 194 Miss. 592, 11 So. 2d 207.

It was not necessary that the accused be warned that the statement that he was about to make might be used against him at the trial. Wohner, et al. v. State, 175 Miss. 428, 167 So. 622, 165 So. 624. This Court held in the case of Criss v. State, 202 Miss. 184, 30 So. 2d 613, that the failure of the officers to warn a prisoner that any statement made by him might be used against him does not render the confession incompetent. And in the case of Clark v. State, supra, the Court held that a free and voluntary confession made by the accused while under arrest was admissible as evidence against him, even though the accused had not been warned that what he might say could be used against him.

The appellant's attorney contends that under the rule laid down in the case of Ellis v. State, 65 Miss. 44, 3 So. 188, and applied in the more recent case of Holmes v. State, 211 Miss. 436, 51 So. 2d 755, the court should not have permitted the confession to go to the jury without first hearing the testimony of Wilson Dickerson, and Horne and Myers. But there is no merit in this contention, for the reason that the appellant was given a full opportunity to have the witnesses called to testify during the preliminary inquiry, but failed to do so, and all three witnesses testified later during the trial and were subjected to rigid cross-examination by the appellant's attorney. The appellant's rights were in no way prejudicially affected by the failure of the trial judge to have them testify during the preliminary inquiry.

The next point argued by the appellant's attorney is that the lower court erred in admitting evidence of the assault and battery made by the defendant upon Mrs. Wesley Dickerson. But there is no merit in this contention, for the reason that the shooting of Mrs. Wesley Dickerson a few minutes after her husband was shot and

the firing of two shots in the direction of the appellant's wife were all a part of the res gestae, and the proof of the shooting of Mrs. Wesley Dickerson was merely an incident to the development of the facts relating to the shooting of her husband and the identification of the assailant.

It is the general rule of course that in a prosecution for crime, evidence which shows or tends to show the commission by the accused of other separate and distinct crimes is not admissible. But there are certain well established exceptions to this rule. It is well settled that testimony which may disclose the commission of other crimes is nevertheless admissible upon the trial of an indictment where such other crime is connected with the one charged in the indictment, and proof of such other crime sheds light upon the motive of the defendant for the commission of the crime charged in the indictment; or where the fact of the commission of such other crime forms a part of a chain of facts so intimately connected that the whole must be heard in order to interpret its several parts. Raines v. State, 81 Miss. 489, 33 So. 19; Collier v. State, 106 Miss. 613; 64 So. 373; Hurd v. State, 137 Miss. 178, 102 So. 293; Stone v. State, 210 Miss. 218, 49 So. 2d 263. In the case of Walker v. State, 201 Miss. 780, 30 So. 2d 239, the Court held that in a prosecution for murder evidence that immediately after shooting the deceased the defendant also shot the wife of the deceased, though not fatally, was properly admitted where the proof showed animosity between the defendant on the one hand and the deceased and his wife on the other.

There was no error in the court's refusal to grant the peremptory instruction requested by the defendant, and the evidence was sufficient to justify the verdict.

158

We find no reversible error in the record and the judgment of the lower court is therefore affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Arrington,* and *Ethridge, JJ.,* concur.