472 So.2d 363 (1985)
Jimmy L. LANCASTER
v.
STATE of Mississippi.
No. 54597.
Supreme Court of Mississippi.
May 29, 1985.
Rehearing Denied July 24, 1985.
J. Joshua Stevens, Jr., H. Lee Morrison, Jr., Tubb, Stevens & Morrison, West Point, for appellant.
*364 Bill Allain, Atty. Gen. by Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and SULLIVAN and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
Jimmy L. Lancaster was indicted, tried and convicted in the Circuit Court of Chickasaw County for the crime of capital murder of one, Robert Kirby. The indictment charges that the appellant killed Kirby while he was acting in his official capacity and in the performance of his official duties as deputy sheriff of Chickasaw County on December 1, 1981. In a bi-furcated trial, the jury found the appellant guilty of capital murder and after further evidence and arguments, the jury returned a sentence of life imprisonment, which was imposed by the trial court. Lancaster appeals from the sentence and judgment of the lower court and assigns the following as error:
I. THAT THE COURT ERRED IN PEREMPTORILY INSTRUCTING THE JURY THAT SELF-DEFENSE COULD NOT BE INTERPOSED IN THIS CASE.
II. THAT MANSLAUGHTER IS THE MOST SERIOUS OFFENSE FOR WHICH THIS DEFENDANT COULD POSSIBLY BE FOUND GUILTY.
III. THAT THE COURT ERRED IN REFUSING TO PROPERLY INSTRUCT THE JURY ON THE ELEMENTS OF CAPITAL MURDER.
IV. THE COURT ERRED IN ALLOWING THE PROSECUTION TO INTRODUCE EVIDENCE OF ANOTHER CRIME.
V. THAT THE TRIAL COURT FAILED TO TAKE STEPS TO PROTECT THE DEFENDANT FROM ATTEMPTS BY LAW ENFORCEMENT OFFICERS TO PRESSURE THE JURY.
The tragic facts of this case are that on November 29, 1981, Lancaster had an argument with his wife, which resulted in her filing simple assault charges against him in the Justice of the Peace Court. The justice court judge in due course issued a warrant for Lancaster's arrest.
On the morning of December 1, 1981, at about 8:30 a.m., Deputy Kirby went to appellant's house to serve the arrest warrant. Kirby was driving an official patrol car and was dressed in his deputy sheriff's uniform. He left the patrol car running and went to the house.
Lancaster, the only witness, testified that Kirby knocked on the door and rang the door bell. He went and blew the horn of the patrol car and then went back and rang the door bell again. Lancaster heard Deputy Kirby call out his name twice. He awakened, dressed and went to the door.
He testified that when he opened his front door, he saw Deputy Kirby. Appellant stated, "Do you have a problem?" At this point, Lancaster contends that Deputy Kirby saw a gun rack holding deer rifles inside the house, panicked and drew his .357 magnum revolver and fired once through the storm door. The fact that the deputy fired his gun once in this manner is confirmed by the physical evidence. The hollow point bullet fragmented when it hit the storm door and some of it lodged in appellant's left chest, the remainder lodging in the ceiling. Lancaster's wounds were superficial and not serious. It is uncontroverted that the Deputy fired from a crouched position with the gun at his hip. According to Lancaster, after Deputy Kirby fired his revolver, he then fled with Lancaster giving chase with a 30.06 deer rifle. As Deputy Kirby was fleeing toward a fence, the appellant fired at him five times with the automatic rifle. Lancaster claims that he did not think he hit Deputy Kirby, but the ballistics evidence shows that he did hit Kirby several times. At this point, Deputy Kirby still had his pistol in his hand.
Lancaster then reloaded his 30.06, but decided to go into this house to get his 7 mm. magnum that had a scope on it. He returned to his carport with the 7 mm. rifle with the scope. He braced himself against a refrigerator, some 80 feet from Kirby, and emptied that gun, striking the deputy *365 at least twice, and once in the head, which was the fatal shot. The autopsy of the deceased showed five entry wounds; one entering the outside of the right thigh, two entering the chest in a downward direction, one entering the back around the region of the kidney and the fatal blow that removed a large portion of the deputy's head.

POINT I.

THAT THE COURT ERRED IN PEREMPTORILY INSTRUCTING THE JURY THAT SELF-DEFENSE COULD NOT BE INTERPOSED IN THIS CASE.
The trial court, outside the presence of the jury, made the following statement:
"Now, taking the defendant's own testimony as he testified from the stand, had he killed Kirby when the thing started at the door, there would be no question about self-defense, absolutely, no question."
"In this case, I think the continuation of the affray, even admitting that the deputy started it, I think the deputy breaking and running twice and going and trying to hide, he only fired his gun one time from the physical facts as shown, the physical evidence that was found there, I am going to rule that he is not entitled to claim self-defense."
The trial court then affirmatively instructed the jury that they could not consider self-defense.[1] In rejecting the self defense instruction, the trial court relied on our recent announcements in Parker v. State, 401 So.2d 1282 (Miss. 1981). In that case a running argument took place between the appellant, his brother and one Tisdale. Tisdale has threatened appellant and his brother with a gun. Shortly thereafter, both Tisdale and Parker went to the police station to make affidavits on each other. Then, they encountered each other across the street from the courthouse and another argument developed. Tisdale fired twice at Parker's brother, striking him once in the leg; the brother shot back, wounding Tisdale, who ran into the courthouse. The brother was armed with a pistol and gave Parker his car keys to get a rifle out of the car. Parker then fired the rifle twice through the courthouse window apparently at Tisdale. This Court, while recognizing that with few exceptions the right of self-defense should not be excluded where the evidence indicates a violent situation and harm to the parties, on the facts of that case, we were of the opinion that the lower court correctly instructed against self-defense, and affirmed Parker's conviction of unlawfully shooting into an occupied building. [401 So.2d 1282, 1286 (Miss. 1981)].
Similarly, we feel that this is not a situation where self-defense was an issue and further there was no evidence of self-defense on which to base such an instruction. Considering the facts most favorable to the appellant and accepting his version of what transpired, Deputy Kirby, the initial aggressor fled after he fired the first shot. The appellant then became the aggressor seeking Deputy Kirby out. When he found him, he emptied one gun on Deputy Kirby, striking him at least three times, once in the back. After emptying one rifle and reloading it, the appellant then turned his back, went into the house, got a more powerful rifle with a scope, and loaded it, "to see the deputy better." The appellant returned now as the aggressor and, using the corner of his house and a refrigerator as obstructions between him and the deputy, fired three additional shots. He freely admits at this time he intended to kill Deputy Kirby. Under these facts, a reasonable jury would not disagree that Lancaster had no reason to believe himself to be in any imminent danger of bodily harm or death.
Accordingly, we agree with the trial judge that there was no evidence of self-defense on which to base such an instruction. To grant an instruction that is not supported by the evidence would be error. This Court stated in Pittman v. *366 State, 297 So.2d 888, 893 (Miss. 1974), "Instructions should be given only if they are applicable to the facts developed in the case being tried." In McBroom v. State, 64 So.2d 144 (Miss. 1953), we said:
This instruction embodies a correct principle of law, but was improper, and not applicable to this case, for the reason that we find no evidence in this record to [support it]... .
"... An instruction not based on the evidence is erroneous in that it introduces before the jury facts not presented thereby, and is well calculated to induce them to suppose that such state of facts in the opinion of the court is possible under the evidence and may be considered by them." 53 Am.Jur., Trial, Sec. 579, P. 455.
We held, in the recent case of Craft v. State, 214 Miss. 752, 59 So.2d 343, that the granting of a similar instruction was erroneous and reversible error where it was not based upon any evidence.
We are aware of our previous holdings that it is improper to refuse a self-defense instruction, save in a few, very rare, cases, but as in Parker, supra, this is one of those occasions. This assignment of error is denied.

POINT II

THAT MANSLAUGHTER IS THE MOST SERIOUS OFFENSE FOR WHICH THIS DEFENDANT COULD POSSIBLY BE FOUND GUILTY.
Appellant's second assignment of error is unusual to say the least. Appellant's contention is that manslaughter is the most serious offense for which the appellant could be found guilty, yet the appellant admits that he did not request a manslaughter instruction, since he felt it would encourage the jury to find him guilty on this compromised charge. Appellant states in his brief: "To be sure, neither the defense counsel nor the prosecuting attorneys requested a manslaughter instruction, even though the trial court indicated he would grant one. Among most experienced criminal attorneys, there is a feeling that giving a manslaughter instruction in a murder case, only encourages a jury to compromise a tough case and return a verdict of manslaughter." (Appellant's br. 32-33). If appellant felt the only thing he was guilty of was manslaughter, obviously he had the responsibility to request such an instruction. The appellant further suggests in his brief: "We believe the state should have requested a manslaughter instruction if they wanted a conviction at all that had the chance of being upheld." Appellant's br. p. 33. We likewise, see no merit to this argument. Whenever a defendant makes a calculated, tactical choice and comes out on the losing end, he cannot then shift the burden to the state or to the trial judge. We made it clear in Newell v. State, 308 So.2d 71 (Miss. 1975), that the trial court cannot be put in error for not granting an unrequested instruction. Appellant's Second Assignment of Error is without merit.

POINT III.

THE COURT ERRED IN REFUSING TO PROPERLY INSTRUCT THE JURY ON THE ELEMENTS OF CAPITAL MURDER.
It is appellant's contention that the trial court committed reversible error in refusing Instruction D-3 which defines "malice aforethought." That instruction reads as follows:
The Court instructs the jury that "malice aforethought" is equivalent to premeditated design or deliberate design and is a necessary element of capital murder.
The appellant argues that the indictment in this case stated that appellant "wilfully, unlawfully and feloniously and with `malice aforethought' murdered a human being." Appellant reasons that since the capital murder statute does not, in and of itself, define murder, and that "malice aforethought" is an essential element of murder, he should have been allowed Instruction D-3.
*367 The instructions granted by the trial court on the elements of capital murder are Instructions S-2 and S-4. These instructions read as follows:
INSTRUCTION S-2
The Defendant, Jimmy L. Lancaster, has been charged by an indictment with the crime of capital murder for having caused the death of Robert Kirby, knowing Robert Kirby was a Deputy Sheriff of Chickasaw County, Mississippi, acting in the line of duty.
If you find from the evidence in this case beyond a reasonable doubt that the deceased, Robert Kirby, was a peace officer acting in his official capacity, by attempting to serve an arrest warrant on the Defendant, Jimmy L. Lancaster, and that the defendant knew the deceased was a peace officer and that the Defendant, Jimmy L. Lancaster, did wilfully, without authority of law, and with his deliberate design kill Robert Kirby, a living person, by shooting him and killing him, then you shall find the defendant Jimmy L. Lancaster, guilty of capital murder. In which event the form of your verdict shall be, to-wit:
"We, the Jury, find the Defendant Jimmy L. Lancaster guilty of capital murder."
writing your verdict on a separate sheet of paper furnished you by the court for that purpose.
INSTRUCTION S-4
The Court instructs the jury that murder is defined by the law of the State of Mississippi as the killing of a human being without authority of law by any means or in any manner, when done with the deliberate design to effect the death of the person killed.

You are further instructed that murder becomes, and is, capital murder when it is perpetrated by killing a peace officer while such officer is acting in his official capacity, and with knowledge of the Defendant that the victim was a peace officer.
You are further instructed that the term Peace Officer includes Deputy Sheriff.
These two Instructions (S-2 and S-4) properly set forth the elements of capital murder. The term "deliberate design" as used in these instructions is synonymous to the phrase "malice aforethought". Dye v. State, 127 Miss. 492, 90 So. 180 (1921). In Erving v. State, 427 So.2d 701 (Miss. 1983), we held that synonymous phrases or interchangeable words may be used in a jury instruction and the jury still be properly instructed. The term "deliberate design" as used in S-2 and S-4, by appellant's own admission, means the same thing as "malice aforethought". Therefore, under these circumstances we see no error in refusing defendant's instruction No. 3.

POINT IV.

THE COURT ERRED IN ALLOWING ADMISSION OF ANOTHER CRIME AND STATEMENT MADE BY DEFENDANT'S WIFE.
Appellant claims that it was error to allow the Judge J.C. Doss to testify as to facts underlying the issuance of the arrest warrant of appellant, as it was evidence of another crime  simple assault. Appellant further contends that the testimony of one spouse against another spouse cannot be received in a criminal case, without the consent of both parties and neither appellant, nor his wife consented to testifying in this case. Appellant cites to us many authorities concerning spousal competency, but his reliance is misguided under the circumstances of this case. This Court has consistently recognized an exception to the admissibility of other crimes if it sheds light on the motive for the commission of the crime for which the accused is being tried.
This Court stated in Horton v. State, 288 So.2d 467 (Miss. 1974):
Ordinarily, testimony which shows, or tends to show, the commission by the accused of another crime is not admissible. One of the exceptions to this rule is *368 that proof of such other crime is admissible if it sheds light upon the motive for the commission of the crime charged in the indictment. Tanner v. State, 216 Miss. 150, 61 So.2d 781 (1953). Proof that defendant is guilty of another crime is admissible when that (1) tends to show that the deceased officer had a right to arrest the appellant without a warrant, or (2) tends to show that the accused knew why he was being arrested, and therefore sheds light on the motive for the commission of the crime for which accused is being tried. White v. State, 70 Miss. 253, 11 So. 632 (1892).
In Norman v. State, 385 So.2d 1298 (Miss. 1980), a case involving aggravated assault on a police officer, we held that evidence of other crimes may be introduced to show motive and to tell the whole story. The Court said:
Norman's second assignment lacks merit. While it is fundamental that the state may not introduce prior specific instances of bad conduct for the purpose of raising the "forbidden inferential sequence," Davis v. State, 377 So.2d 1076 (Miss. 1979), specific instances  here, the sale of drugs  may come in to show motive. McGee v. State, 365 So.2d 302, 303 (Miss. 1978); Carr v. State, 175 Miss. 102, 166 So. 363 (1936).
In this case, the jury would have had an unnecessarily restricted view of relevant facts if the court had not permitted witnesses to develop the "whole story" giving rise to the assault. The jury would have been left in ignorance of the purpose of the attempted arrest and the motive of the flight of the suspects.
We agree with the trial court that Justice Court Judge Doss' testimony was relevant and admissible to shed light on the motive of the appellant and further to tell the jury the whole story giving rise to the deputy's death. For these reasons we find no merit in appellant's assignment of error.

POINT V.

THE COURT ERRED IN OVERRULING APPELLANT'S OBJECTIONS TO THE PRESENCE OF LAW ENFORCEMENT OFFICERS IN THE COURTROOM.
Appellant argues that several law enforcement officers were within the rail of the courtroom asserting influence on the jury. Specifically, appellant cites Uniform Circuit Court Rules § 1.01(b) that only officers of the court, attorneys, judges, members of the press, litigants and representatives of the litigants of the case on trial may be allowed within the rail, constituting the bar of the court. From a review of the record, we have not been able to ascertain whether the appellant was prejudiced in any respect by the presence of the law enforcement officers behind the bar of the court. The record does reflect that when the objection was made, the trial judge expressed concern about having sufficient security for the courtroom.[2] We caution trial judges to avoid the appearance of intimidation. However, under the circumstances of this case, we hold that the trial court did not abuse its discretion in allowing the officers to remain inside the bar of the court. We see no merit in appellant's final assignment of error.
The verdict of the jury in this case was amply supported by the evidence. Therefore, we will affirm the judgment of the lower court.
AFFIRMED.
PATTERSON, C.J., ROY NOBLE LEE, P.J., and PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
DAN M. LEE, J., dissents.
WALKER, P.J., and HAWKINS, J., not participating.
*369 DAN M. LEE, Justice, dissenting:
In the cool, deliberate process of appellate review where every option may be considered, discussed and explored so that the "right" result might be achieved, one of the greatest threats to the "right" result is that we may sometimes forget that the people we judge have not had the benefit of acting after such cool deliberation. Because I fear that the majority opinion is the result of such misguided thought and that its result is to deprive Lancaster of his right to have his actions weighed by a jury that has been properly instructed, I dissent. Throughout Lancaster's trial his position was that he was acting in self-defense when he shot Deputy Kirby. In my opinion the proof at trial, both through Lancaster's testimony and the physical evidence, was sufficient to require that Lancaster's jury be instructed as to the law of self-defense.
Time after time this Court has held that it is only in "the few, very rare cases" where a trial court may properly deprive a defendant of the defense of self-defense. McMullen v. State, 291 So.2d 537 (Miss. 1974); Craft v. State, 271 So.2d 735 (Miss. 1973); Tate v. State, 192 So.2d 923 (Miss. 1966); Coleman v. State, 179 Miss. 661, 176 So. 714 (1937); Lofton v. State, 79 Miss. 723, 31 So. 420 (1901); and scores of others. Any such ruling in the absence of those "very rare" circumstances has consistently been held to be reversible error.
Although the trial judge stated that "had [Lancaster] killed Kirby when the thing started at the door, there would be no question about self-defense, absolutely no question," he went on to conclusively find as a fact that Kirby had broken off the attack and that Lancaster had thus lost any right to claim self-defense. The judge then proceeded to not only refuse Lancaster's self-defense instruction, but also to caution his attorney not to argue that theory before the jury.
Under Miss. Code Ann. § 97-3-15(f)(1972):[1]
The killing of a human being by the act, procurement, or omission of another shall be justifiable ... [w]hen committed in the lawful defense of one's own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished. [emphasis added].
As we recently stated in Cook v. State, 467 So.2d 203 (Miss. 1985), "[t]he actor's apprehension must be objectively reasonable before his homicide is justified." Cook, at 207 (emphasis in original). Therefore there existed a question of fact as to whether the circumstances facing Lancaster at the time of the shooting were sufficient to create an objectively reasonable ground to apprehend a design to do him some great personal injury and whether there was imminent danger of such design being accomplished. To answer these inquiries it is not necessary to determine whether Kirby had actually broken off the attack or had simply moved to seek a more strategic position; rather, the focus is appropriately whether under the circumstances Lancaster could have reasonably believed that Kirby was simply withdrawing to gain a safe position from which to continue the conflict. See, Pulpus v. State, 82 Miss. 548, 34 So. 2 (1903).
Both Lancaster's testimony and the physical evidence fully support the theory that it was Kirby who shot first, without provocation. In fact, I defy any member of the majority to examine the record and find evidence to the contrary. In order to fully comprehend that a jury could have been absolutely within their province in determining that Lancaster could have continued to reasonably believe himself to be in imminent danger following Kirby's run to the fence line, one must only remove himself from the cool and deliberate process of judicial review and place themselves in Lancaster's position. This was a real gun battle where the stakes were life and *370 death. It originated spontaneously and without provocation. Lancaster was never asked to surrender nor told he was under arrest.[2] Kirby fired his weapon first and in doing so wounded Lancaster. Lancaster, wounded and in shock, grabbed a weapon and returned fire. Because of gun powder burns and debris left in his eye from Kirby's shot, Lancaster's vision was blurred. He grabbed another rifle, this one with a scope. Kirby had positioned himself behind a tree stump and was holding his .357 Magnum with both hands in the direction of Lancaster's house. Lancaster fired three quick shots, the last of which killed Kirby. The entire gun battle lasted somewhat under a minute and a half.
Had Lancaster stalked Kirby and killed him like a wounded animal the majority's conclusion would be appropriate; however, from the evidence and testimony in the record he did no such thing. It is inconceivable to me that this Court can sanction the trial court's ruling which had the absolute effect of denying Lancaster any defense at all. See Knowles v. State, 410 So.2d 380 (Miss. 1982).
The issues of whether Lancaster concluded that he was in imminent danger and whether that conclusion was objectively reasonable under the circumstances were exclusively within the province of the jury. To allow the trial court to peremptorily find as fact that the attack had been broken off violates the province of the jury, stops short of reaching the real issues involved in a claim of self-defense, and in this case is tantamount to instructing the jury to return a guilty verdict.
We must take great caution not to allow the tragedy of the event to narrow our vision. Only after guaranteeing that the events at Lancaster's home that day be fully considered by a properly instructed jury may we rest in the comfort of knowing justice has been served. To stop short of that point is to delude ourselves and ignore the fact that the accused's only defense was wrongfully denied him leaving the jury with no alternative but to find him guilty.
NOTES
[1] State's Instruction S-1 reads as follows: "The court instructs the jury that self-defense is not a defense to the crime charged in the indictment in this case, and self-defense should not be considered by you in determining your verdict."
[2] This case involved the shooting of a black Deputy Kirby by Lancaster, who is white. There had been recent demonstrations involving racial concerns in the area. The trial judge noted that in one incident a gun was pulled on the sheriff in a courthouse. The court noted further that an explosive situation existed which accounted for the presence of an unusually large number of officers.
[1] Now § 97-3-15(1)(f).
[2] The proof clearly shows that the arrest warrant never left Kirby's shirt pocket.