961 So.2d 768 (2007)
Jimmy L. LANCASTER, Appellant
v.
J. Joshua STEVENS, Jr. and H. Scott Ross, Appellees.
No. 2006-CA-00814-COA.
Court of Appeals of Mississippi.
July 17, 2007.
*769 Kristy L. Bennett, attorney for appellant.
Jan F. Gadow, Rodney A. Ray, W. Wright Hill, Jr., Jackson, attorneys for appellees.
Before LEE, P.J., BARNES AND CARLTON, JJ.
LEE, P.J., for the Court.
¶ 1. The present appeal involves a complaint for legal malpractice filed by Jimmy Lancaster against his attorneys for mishandling the appeal of his conviction of capital murder. This case originated in December 1981 in Chickasaw County when Deputy Robert Kirby went to Lancaster's house to serve him with an arrest warrant and was shot and killed by Lancaster. A Chickasaw County jury found Lancaster guilty of capital murder. Joshua Stevens and Scott Ross represented Lancaster at trial and on direct appeal to the Mississippi Supreme Court. His conviction was affirmed on appeal. See Lancaster v. State, 472 So.2d 363 (Miss.1985). John Booth Farese assisted in preparing Lancaster's motion for rehearing, which was denied.
¶ 2. Lancaster, still represented by Stevens and Ross, paid $10,000 for his habeas corpus motion and federal appeals. A petition for writ of habeas corpus was filed in the United States District Court for the Northern District of Mississippi, but the petition was found to be without merit and was denied. On March 28, 1990, Stevens and Ross filed a brief to the Fifth Circuit Court of Appeals on Lancaster's behalf. However, the brief was filed in an improper *770 form and the court advised Lancaster's attorneys that unless the error was corrected the appeal would be dismissed. The error was not corrected, and the Fifth Circuit struck Lancaster's brief for failure to comply with the page limitations set out in Federal Rule of Appellate Procedure 28(g) and Fifth Circuit Local Rule 28.1. Stevens and Ross failed to notify Lancaster that the brief had been stricken and failed to file a corrected brief. On May 7, 1990, the Fifth Circuit dismissed Lancaster's appeal for failure by his attorneys to prosecute.
¶ 3. The last communication Lancaster received from his attorneys was on February 20, 1990, in a letter that stated that Lancaster would be the "first to know" the outcome of his appeal. Over a year passed and Lancaster heard nothing about the status of his appeal. On June 23, 1991, he wrote to the clerk of the Fifth Circuit Court of Appeals asking about the status of his appeal. The clerk responded on June 27 advising Lancaster that his appeal had been closed since March 29, 1990. Over the next eighteen months Lancaster attempted to locate counsel to prosecute his appeal. He initially tried to contact his previous attorneys but was unsuccessful. An inmate and friend of Lancaster's, Jerry Young, offered to help Lancaster with his legal proceedings. Lancaster began requesting his file from his attorneys on May 26, 1992. He and Young continued to request his file through phone calls and letters for the next six months. On several occasions, Lancaster's attorney or a secretary promised the file would be sent.
¶ 4. On December 8, 1992, Lancaster filed a pro se complaint for legal malpractice and breach of contract in the Circuit Court of Clay County against Stevens and Ross. At the time Lancaster filed the complaint for legal malpractice his file had not been sent, but he received it later in the month. On March 30, 2006, the Circuit Court of Clay County granted summary judgment in favor of Stevens and Ross finding that Lancaster failed to meet the burden of proof for legal malpractice.
¶ 5. Lancaster now appeals to this Court citing the following issues: (1) it was reversible error for the trial court to grant summary judgment on his breach of contract claims; (2) it was reversible error for the trial court to fail to consider his intentional infliction of emotional distress claim when it ruled on defendants' motion for summary judgment; and (3) it was reversible error for the trial court to fail to determine if the defendants' conduct resulted in Lancaster's Rule 60(b) motion being denied because it was untimely.

STANDARD OF REVIEW
¶ 6. This Court applies a de novo standard of review to the grant or denial of summary judgment by a trial court. Leffler v. Sharp, 891 So.2d 152, 156(¶ 9) (Miss. 2004). When the evidence is considered in the light most favorable to the non-moving party, there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. M.R.C.P. 56(c); Russell v. Orr, 700 So.2d 619, 622(¶ 10) (Miss.1997).

DISCUSSION
I. WAS IT REVERSIBLE ERROR FOR THE TRIAL COURT TO GRANT SUMMARY JUDGMENT ON LANCASTER'S BREACH OF CONTRACT CLAIMS?
¶ 7. Lancaster argued to the circuit court that even if the court ruled against him on his legal malpractice claim, the matter should proceed to trial on his claims of bad faith breach of contract and reckless infliction of emotional distress. *771 Lancaster argues that the trial court used the wrong burden of proof in requiring him to prove that had his attorneys properly prosecuted his case, he would have been successful on appeal. Finding this issue dispositive, the trial court did not address the reckless infliction of emotional distress or breach of contract claims in its ruling. In granting Stevens's and Ross's motion for summary judgment, the trial court ruled as follows:
Plaintiff has the burden of proving that had the Defendants properly defended or prosecuted his case, he would have been successful, and but for the Defendants' negligence he would have been granted a new trial and the Fifth Circuit Court of Appeals would have granted his Writ of Habeas Corpus. Plaintiff's burden of proof is identical whether proceeding in tort or breach of contract.
Plaintiff has failed to meet his burden of proof and therefore the Defendants' Motion for Summary Judgment should be sustained.
Legal malpractice
¶ 8. To recover for legal malpractice, the plaintiff must prove by a preponderance of evidence the following: "(1) Existence of a lawyer-client relationship; (2) Negligence on the part of the lawyer in handling his client's affairs entrusted to him; and (3) Proximate cause of the injury." Hickox v. Holleman, 502 So.2d 626, 633 (Miss.1987). As to the third factor, proximate cause, the plaintiff must show that, "but for his attorney's negligence, he would have been successful in the prosecution or defense of the underlying action." Wilbourn v. Stennett, Wilkinson & Ward, 687 So.2d 1205, 1215 (Miss.1996).
¶ 9. Using the "but for" test, Lancaster cannot succeed on a legal malpractice claim. Lancaster's arguments to the Fifth Circuit were whether he was denied a fair trial due to (1) the presence of law enforcement officers in the courtroom on the day of closing arguments and (2) the trial court's denial of his proposed self-defense jury instruction. Both of these arguments were addressed and denied by the Mississippi Supreme Court in his first appeal. Lancaster, 472 So.2d at 363. During Lancaster's murder trial, the trial court, outside the presence of the jury, stated that "even admitting that the deputy started it, I think the deputy breaking and running twice and going and trying to hide" precluded a jury instruction on self-defense. Id. at 365. The supreme court agreed that the self-defense instruction was properly denied. Id. The supreme court also found that the law enforcement officers allowed within the rail of the courtroom did not influence the jury's decision. Id. at 368. The trial court expressed concern about having sufficient security for the courtroom since Lancaster was white and the deputy he killed was black and there had been recent demonstrations involving racial concerns in the area. Id. The trial court also noted that an "explosive situation" existed which accounted for the presence of an unusually large number of officers in the courtroom. Id. We find that the trial court gave sufficient justifications for its ruling on the two issues that would have been appealed to the Fifth Circuit had the brief been filed correctly. Also, the United States Supreme Court denied certiorari on these two issues. We cannot find that but for Stevens's and Ross's negligence, Lancaster would have been successful on appeal.
¶ 10. The issue of legal malpractice is without merit. However, the discussion does not end here as we find that the trial judge erred in failing to address the remaining issues before the court.
Breach of contract
¶ 11. Regardless of the merit of the legal malpractice claim, Lancaster argues *772 that he can still succeed on a breach of contract claim because the "but for" standard used by the trial court is not applicable to a breach of contract action. Lancaster refers this Court to Hurst v. Southwest Miss. Legal Servs. Corp., 610 So.2d 374, 377 (Miss.1992) (Hurst I)[1], in which the supreme court allowed a breach of contract action against an attorney who abandoned her clients' appeal without discussing whether the appeal would have been successful. The Hursts' attorney perfected an appeal on behalf of the defendants but never filed a brief despite repeated extensions. Id. The appeal was ultimately dismissed for lack of prosecution. Id.
¶ 12. Lancaster paid $10,000 with the expectation that his attorneys would ensure the proper filing of his appeal. Even if Stevens and Ross felt the appeal to the Fifth Circuit was futile, they still undertook the appeal and accepted payment and, thus, "incurred an obligation to press ahead absent a proper withdrawal." Hurst I, 610 So.2d at 382. An attorney who abandons an appeal without informing his client or being properly relieved by the court of record is guilty of breaching an implied contractual duty. Id.; Myers v. Miss. State Bar, 480 So.2d 1080, 1092 (Miss.1985). Stevens and Ross admit that an attorney/client relationship existed and that they breached their contractual duty to Lancaster in failing to properly file his brief to the Fifth Circuit. We find that the trial court erred in failing to address this issue in its ruling.
¶ 13. As it was undisputed that Lancaster's attorneys breached their contractual duties, the trial court erred in not submitting this issue to a jury for a determination of damages. The jury should also consider whether punitive damages are warranted. When deciding whether to submit the issue of punitive damages to a trier of fact, the trial court looks at the totality of the circumstances, as revealed in the record, to determine if a reasonable, hypothetical tier of fact could find either malice or gross neglect/reckless disregard. Bradfield v. Schwartz, 936 So.2d 931, 936(¶ 15) (Miss.2006).
¶ 14. The judgment of the trial court on the issue of breach of contract is reversed and remanded for a jury trial on damages.
II. WAS IT REVERSIBLE ERROR FOR THE TRIAL COURT TO FAIL TO CONSIDER LANCASTER'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM WHEN HE RULED ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT?
¶ 15. Lancaster argues that his complaint provided sufficient facts to place the defendants on notice that he was raising an intentional infliction of emotional distress claim. Lancaster also specifically mentioned a claim for reckless infliction of emotional distress in a brief before the lower court filed on February 14, 2005. He also argued it in the supplemental brief he filed on March 6, 2006. The trial court did not address or rule on this issue.
¶ 16. Stevens and Ross argue that Lancaster failed to put them on notice that he was bringing an intentional infliction of emotional distress claim. However, they argue that even if Lancaster's complaint sufficiently alleged a claim for intentional infliction of emotional distress, any such claim is also a legal malpractice claim and the trial court's grant of summary judgment encompassed and dismissed the claim. Since Lancaster's complaint was by *773 one incarcerated and acting pro se, "we take that fact into account and, in our discretion, credit not so well pleaded allegations, [citations omitted] to the end that a prisoner's meritorious complaint may not be lost because inartfully drafted." Singleton v. Stegall, 580 So.2d 1242, 1246 (Miss.1991) (citing Moore v. Ruth, 556 So.2d 1059, 1061 (Miss.1990)).
¶ 17. We find that the trial judge erred in failing to make a ruling on Lancaster's claim for intentional infliction of emotional distress. Lancaster made the following statement in his affidavit dated February 6, 2005:
Learning that my appeal had been dismissed had a devastating effect on me. It actually made me sick. I am sure that the stress and worry that I went through at that time [caused] the ulcers I still have to begin developing. There would be nights that I could not sleep for worrying about what was going to happen to me. . . .
I suffered a great deal of mental stress and anguish worrying about whether the Defendants would provide me with the records Mr. Young needed to try to get my case back into federal court. I knew that I might not ever make parole because I had killed a law enforcement officer. I felt like Mr. Young was my last and only hope of ever getting out of prison. I feel sure the stress and worry I suffered while trying to get my records contributed to the development of the ulcers that still bother me. I was also unusually fatigued during that time, had headaches, insomnia, and gastrointestinal disorders alternating from constipation to diarrhea.
Taking the evidence in the light most favorable to Lancaster, the non-moving party, summary judgment was not appropriate as this issue presented a genuine issue of material fact and should have been addressed by the trial court. Russell, 700 So.2d at 622(¶ 10).
¶ 18. On remand, the trial court should address the long recognized right of action for tortious infliction of emotional distress. See, e.g., Blue Cross & Blue Shield of Miss., Inc. v. Maas, 516 So.2d 495, 498 (Miss.1987); First Nat'l Bank v. Langley, 314 So.2d 324, 328 (Miss. 1975). However, the court should regard carefully three important caveats to the claim. Singleton, 580 So.2d at 1247. First, a legal malpractice plaintiff may not recover for emotional distress flowing from his dilemma with the law. Id. Lancaster's imprisonment has already likely produced a certain level of anxiety and distress which should not be taken into account. Lancaster must show that his attorneys' defaults have proximately caused him substantial emotional distress that may be differentiated from that attendant upon his legal plight. Id. He must also prove cause and damage through credible and discriminating evidence. Id. Second, even under the best of circumstances, a citizen's encounter with the legal process is a source of great anxiety. Id. Lancaster may recover damages only for emotional distress fairly separable from that proximately flowing from his encounter with the legal process. Id. Third, Lancaster may recover damages only for substantial emotional distress, not necessarily rising to the dignity of a diagnosable mental disorder, but surely approaching such. Id.
III. WAS IT REVERSIBLE ERROR FOR THE TRIAL COURT TO FAIL TO DETERMINE IF THE DEFENDANTS' CONDUCT RESULTED IN LANCASTER'S RULE 60(b) MOTION BEING DENIED BECAUSE IT WAS UNTIMELY?
¶ 19. On December 29, 1992, over two-and-a-half years after the dismissal of *774 his appeal, Lancaster filed a motion pursuant to Federal Rule of Civil Procedure 60(b) in the United States District Court for the Northern District of Mississippi asking that the court vacate or set aside its April 1989 order denying his application for writ of habeas corpus. The petition asked the district court, after vacating the previous order, to file a new order again denying the writ, thereby affording him the opportunity to file a timely appeal to the Fifth Circuit Court of Appeals. The district court denied the 60(b) motion, and Lancaster appealed its decision to the Fifth Circuit. Lancaster v. Presley, 35 F.3d 229, 231 (5th Cir.1994). In affirming the district court's denial of his 60(b) motion, the Fifth Circuit found as follows:
In effect, Lancaster asks the district court to use Rule 60(b)(6) to overturn this Court's dismissal of his appeal. Quite obviously, the district court lacks jurisdiction to overturn an order of this Court. Rule 60(b)(6) was not intended as a remedy for all wrongs, and certainly does not confer super-appellate jurisdiction on the district court.
Id. at 232 (footnotes omitted).
¶ 20. The Fifth Circuit has "repeated and firmly held that Rule 60(b) cannot be used to extend the time for appeal." Id. at 232 n. 1 (citing In re Air Crash at Dallas/Fort Worth Airport, 852 F.2d 842, 844 (5th Cir.1988)). We recognize that Lancaster was not promptly informed that his appeal was dismissed. However, the fact that Lancaster lacked contemporaneous knowledge of the entry of dismissal is not material to this issue. "We have consistently held that the simple failure of the clerk to mail notice of the entry of judgment, without more, does not permit relief to a party who has failed to appeal within the prescribed time." Id. at 231-32 (citing Wilson v. Atwood Group, 725 F.2d 255, 256-58 (5th Cir.1984)).
¶ 21. Lancaster's argument that the defendants' conduct resulted in his rule 60(b) motion being denied is without merit.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF CLAY COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR A DETERMINATION OF WHETHER DAMAGES ARE OWED TO APPELLANT AND FOR DETERMINATION ON THE ISSUE OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. KING, C.J., AND CHANDLER, J., NOT PARTICIPATING.
NOTES
[1] Overruled on the issue of punitive damages by Hurst v. Southwest Miss. Legal Servs. Corp., 708 So.2d 1347 (Miss.1998) (Hurst II); affirmed on all other issues. Overruled on interpretation of M.R.C.P. 12 by Rains v. Gardner, 731 So.2d 1192 (Miss.1999).