# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01423-COA

ANGELA T. LAIRY, TURNER & ASSOCIATES,             APPELLANTS
PLLC, CAROLYN T. KARRIEM AND THE
ESTATE OF BENNIE L. TURNER

v.

LORI CHANDLER                                   APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 07/08/2019 |
| TRIAL JUDGE: | HON. LARRY E. ROBERTS |
| COURT FROM WHICH APPEALED: | CLAY COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | RANDOLPH WALKER |
| | ANGELA TURNER FORD |
| | BARBARA LEE CLARK |
| ATTORNEYS FOR APPELLEE: | CHARLES M. MERKEL JR. |
| | EDWARD P. CONNELL JR. |
| | ROBERT ALEXANDER CARSON III |
| | JOHN H. COCKE |
| | CORRIE SCHULER |
| NATURE OF THE CASE: | CIVIL - LEGAL MALPRACTICE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 10/05/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WILSON, P.J., GREENLEE AND WESTBROOKS, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.     Lori Chandler sued the law firm of Turner & Associates PLLC, the estate of the firm's deceased former managing partner (Bennie Turner), another attorney with the firm (Angela T. Lairy), and a non-lawyer case manager at the firm (Carolyn Karriem) for legal malpractice after the law firm failed to file her workers' compensation claim within the statute of limitations.  The trial court granted partial summary judgment in favor of Chandler and

against all defendants on the issue of liability. Following a bench trial on damages, the trial court found that all defendants were jointly and severally liable for compensatory damages of $50,000 and that Karriem was liable for punitive damages of $100,000 because she had committed fraud in an effort to conceal the failure to file Chandler's claim.

¶2. On appeal, the defendants argue that the trial court erred by granting partial summary judgment against Lairy on the issue of liability; that the trial judge's award of compensatory damages is not supported by substantial evidence; and that the trial judge erred by not considering Karriem's net worth in awarding punitive damages. We conclude that the trial court erred by granting partial summary judgment against Lairy and that there is no substantial evidence to support the trial court's award of compensatory damages. Therefore, we reverse and remand the case for further proceedings consistent with this opinion on those issues. However, we affirm the award of punitive damages against Karriem.

## FACTS AND PROCEDURAL HISTORY

¶3. Chandler worked for Cooper Tire & Rubber Co. as a forklift driver. In March 2008, she was injured at work when another forklift hit her forklift from behind and injured her lower back and neck. Chandler's doctor told her that she could return to work but restricted her to light-duty. For three days, Chandler returned to work doing paperwork, but Cooper Tire then laid her off because it did not have any light-duty work for her.

¶4. In August 2008, Chandler approached Turner & Associates about pursuing a workers' compensation claim. Chandler testified that she met with Lairy and Karriem at the law firm's office and that Lairy agreed to file a workers' compensation claim on her behalf. In contrast,

2

Karriem testified that she met with Chandler alone, and Lairy testified that she never met with Chandler on any occasion and never worked on Chandler's case. Chandler also testified that she and Lairy both signed a retention agreement during their initial meeting, but Chandler could not produce a copy of the agreement. The defendants also did not produce a copy of the agreement, but the firm's electronic case management system showed that Chandler had been signed up as a client in August 2008.

¶5. At the time Chandler became a client of the firm, Bennie Turner was the firm's managing attorney and sole owner. Turner remained in that role until his death in November 2012. Lairy testified that she worked at the firm as an independent contractor prior to her father's death, at which time she became the firm's managing attorney. Lairy and Karriem are sisters, and Turner is their father.

¶6. Chandler testified that she next contacted Lairy in February 2009. According to Chandler, Lairy told her that "before she could receive a settlement offer, . . . all of [her] doctor visits had [to be] completed." Chandler did not contact the law firm again in 2009 or 2010. She contacted the firm again in 2011 and began inquiring periodically regarding the status of her case and whether Cooper Tire had made a settlement offer. Unbeknownst to Chandler, the firm had never filed her workers' compensation claim, and the two-year statute of limitations had already expired.

¶7. Karriem realized at some point that the firm had not filed Chandler's claim and that the statute of limitations had expired. In April 2012, in an effort to conceal the firm's failure to file the claim, Karriem told Chandler that Cooper Tire had offered to settle her claim for

$25,000. Chandler turned down the fictitious settlement offer and told Karriem that she would check back later. In May of 2012, Karriem told Chandler that Cooper Tire had made a new settlement offer of $30,000, but Chandler turned down that offer as well. Over the course of the next year, Karriem told Chandler that Cooper Tire had increased its offer to $35,000, $55,000, $60,000, $75,000, $85,000, $92,000, and $94,000. Chandler turned down each of these fictitious offers. Chandler testified that when she visited the law firm, she always asked to speak to Lairy, but the receptionist always told her that Lairy was busy or unavailable and directed her to Karriem. Chandler testified that she finally met with Lairy again in June 2013 and that Lairy told her that Cooper Tire had increased its settlement offer to $100,000. Chandler accepted this fictitious offer. In conflict with Chandler's testimony, Karriem testified that she alone conveyed all of the fictitious settlement offers. Lairy likewise denied any involvement in the fictitious settlement offers.

¶8.     In July 2013, Karriem prepared a settlement agreement, a release, an explanation of the distribution of the settlement proceeds, and correspondence from Blake Berry at Cooper Tire that purported to document a $100,000 settlement offer and agreement. Karriem had Chandler sign the settlement documents. Over the next few months, Chandler continued to visit the law firm and asked to talk to Lairy, but Karriem repeatedly told her that Lairy was unavailable and that they were still in the process of finalizing the settlement. Finally, in December 2013, Chandler faxed Lairy a termination letter and sought help from another attorney. Chandler then contacted Cooper Tire and learned that there was no settlement offer and that her claim had never even been filed. She also learned that "Blake Berry" did not

4

exist and that the documents she had received from Karriem were all fakes.

¶9.    In February 2014, Chandler sued Turner & Associates PLLC, the Estate of Bennie Turner, Lairy, and Karriem for legal malpractice and compensatory and punitive damages. The local circuit judges all recused, and Judge Henry Lackey was appointed to preside in the case. Prior to trial, Judge Lackey entered an order granting partial summary judgment in favor of Chandler and against all defendants on the issue of liability only. In his order, Judge Lackey concluded that it was undisputed that Chandler's workers' compensation claim was barred by the statute of limitations because of the defendants' negligence. Judge Lackey unfortunately passed away prior to the trial on damages, and Judge Larry Roberts was appointed to preside in the case.[1] The parties then waived a jury trial and proceeded to a bench trial on the issues of compensatory damages and punitive damages.

¶10.    Following the compensatory-damages phase of the trial, the trial judge awarded compensatory damages of $50,000. The trial then proceeded to a separate phase on punitive damages. At the conclusion of the evidence on punitive damages, the trial judge awarded punitive damages of $100,000 against Karriem only. The trial judge declined to award punitive damages against Lairy because he could not find by clear and convincing evidence that she had been involved in Karriem's effort to fraudulently conceal the firm's failure to file Chandler's claim.

¶11.    The defendants filed a motion for a new trial, which was denied, and a notice of

---

[1] After he was appointed, Judge Roberts entered an order granting partial summary judgment in favor of Chandler that was substantively identical to Judge Lackey's prior order. Judge Roberts stated that he did so because Judge Lackey had only "ruled from the bench" prior to his passing. In fact, however, Judge Lackey had already entered a written order.

appeal. On appeal, the defendants make three arguments. First, they argue that the trial court erred by granting partial summary judgment against all defendants on the issue of liability. The defendants' argument on this issue relies on the conflicting evidence regarding Lairy's involvement or lack of involvement in Chandler's case, so we address that particular issue and the grant of partial summary judgment only with respect to Lairy. Second, the defendants argue that the trial judge's finding that Chandler sustained compensatory damages of $50,000 is not supported by substantial evidence. Third, the defendants argue that the trial judge erred by not considering Karriem's net worth when awarding punitive damages. We address these issues in turn.

**STANDARD OF REVIEW**

¶12.    We review an order granting summary judgment de novo. *Ill. Cent. R.R. Co. v. Jackson*, 179 So. 3d 1037, 1044 (¶16) (Miss. 2015). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). However, the court must "view[] all evidence in the light most favorable to the non-movant" and must "presume that all evidence in the non-movant's favor is true." *Downs v. Choo*, 656 So. 2d 84, 85 (Miss. 1995). "We consider as well that the [non-movant] is entitled to the benefit of all reasonable favorable inferences that may be drawn from the record." *Burkhalter & Co. v. Wissner*, 602 So. 2d 835, 838 (Miss. 1992). "[T]he court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried." *Brown v. Credit*

6

*Ctr. Inc.*, 444 So. 2d 358, 362 (Miss. 1983) (emphasis omitted) (quoting former M.R.C.P. 56 cmt.); *see also Richardson v. Norfolk S. Ry. Co.*, 923 So. 2d 1002, 1007 (¶9) (Miss. 2006) ("A motion for summary judgment is not a substitute for a trial of disputed fact issues.").

¶13. A trial judge's findings of fact following a non-jury trial "are subject only to a limited scope of review if the trial judge applied the appropriate legal standard." *Univ. Med. Ctr. v. Martin*, 994 So. 2d 740, 746 (¶24) (Miss. 2008). It is the role of the trial judge, not this Court, to resolve conflicts in the evidence, evaluate the credibility of the witnesses, and determine the weight of the evidence. *Id.* at 746-47 (¶¶24-25). "If there is substantial supporting evidence in the record, this Court will not reverse a trial court's findings, even if this Court disagrees with those findings." *Id.* at 747 (¶26). Moreover, we "must examine the entire record and must accept that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact." *Id.* (comma, quotation marks, and brackets omitted).

**ANALYSIS**

**I.    The trial court erred by granting partial summary judgment against Lairy.**

¶14. Chandler claims that she personally met with Lairy in August 2008 and that Lairy agreed to take her case and signed her up as a client of the law firm. Chandler also claims that she talked with Lairy in February 2009 and that Lairy told her that she needed to complete her medical treatment for her back before she could receive a settlement offer. In contrast, Lairy denied that she ever met with Chandler regarding her case or worked on the

7

case. Karriem also testified that Lairy did not meet with Chandler or work on Chandler's case. Lairy opposed Chandler's motion for partial summary judgment based on this conflict in the evidence.

¶15. In the circuit court, citing Mississippi Code Annotated section 79-29-920(1) (Rev. 2013), Chandler also argued that Lairy was liable for Karriem's actions even if Lairy did not meet with Chandler or work on her case. That statute provides:

> Each individual who renders professional services as an employee of a domestic or foreign professional limited liability company is liable for a negligent or wrongful act or omission in which the member personally participates to the same extent as if the member rendered the services as a sole practitioner. A member or an employee of a domestic or foreign professional limited liability company is not liable, however, for the conduct of other members or employees of the limited liability company, *except a person under the member's direct supervision and control*, while rendering professional services on behalf of the professional limited liability company to the person for whom such professional services were being rendered.

Miss. Code Ann. §79-29-920(1) (emphasis added). Chandler argued that Lairy was liable under the italicized language of the statute because she was the law firm's "managing attorney" and directly supervised Karriem. *See Keszenheimer v. Boyd*, 897 So. 2d 190, 193 (¶12) (Miss. Ct. App. 2004) (stating that a lawyer-member of a PLLC "cannot be held liable unless he either personally participated in a negligent or wrongful act *or directly supervised someone who committed wrongful conduct*" (emphasis added)), *cert. denied*, 896 So. 2d 373 (Miss. 2005). However, Lairy was not the firm's managing attorney at the time the firm failed to file Chandler's workers' compensation claim within the statute of limitations. Rather, Bennie Turner was the managing attorney until he passed away in November

8

2012—well after the statute of limitations had already expired.[2]  Lairy testified that Turner was the sole owner of the firm prior to his death and that she only worked at the firm as an independent contractor.  Prior to Turner's death, Lairy devoted a significant part of her time to serving as the city prosecutor, the county prosecutor, and the youth court prosecutor.

¶16.    Given the conflicts in the evidence, the circuit court erred by granting partial summary judgment against Lairy.  Accepting Lairy's and Karriem's testimony as true, as we must for purposes of summary judgment, *Downs*, 656 So. 2d at 85, a fact-finder could conclude that Lairy never met with Chandler, never worked on Chandler's case, and did not directly supervise Karriem's handling of Chandler's case prior to the expiration of the statute of limitations.  On that view of the evidence, Lairy would be covered by the general rule that one employee of a PLLC "is not liable . . . for the conduct of other members or employees of the [PLLC]."  Miss. Code Ann. § 79-29-920(1).  Based on this conflict in the evidence, we agree with Lairy that the circuit court erred by granting partial summary judgment against her individually, and we reverse and remand for further proceedings with respect to Chandler's claim against Lairy.

> **II.    The trial judge's finding that Chandler sustained compensatory damages of $50,000 is not supported by substantial evidence.**
>
> **A.    The Evidence and Chandler's Argument**

¶17.    A plaintiff in a legal malpractice case bears the burden of proving (1) the existence

---

[2] Lairy did become the managing attorney after her father's death.  However, the trial court granted partial summary judgment against Lairy and awarded compensatory damages against Lairy based on the law firm's failure to file Chandler's claim within the statute of limitations, which occurred well before Lairy became the managing attorney.

9

of an attorney-client relationship, (2) negligence, and (3) proximate causation. *Thompson v. Erving's Hatcheries Inc.*, 186 So. 2d 756, 759 (Miss. 1966). When, as in this case, the attorney's negligence consists of the failure to file a claim within the statute of limitations, the plaintiff must show that the lost claim "would have been successful" if it "had been properly prosecuted." *Id.* In such a case, the measure of damages is "the value of the claim lost . . . as a[] . . . result of the attorney's negligence." *Id.*[3]

¶18. In this case, Chandler alleges that the defendants' negligence resulted in the loss of her claim for temporary disability benefits under the workers' compensation statutes.[4] *See* Miss. Code Ann. § 71-3-17(b) (Supp. 2012) (compensation for temporary total disability); Miss. Code Ann. § 71-3-21 (Rev. 2011) (compensation for temporary partial disability). In order to have prevailed on her workers' compensation claim, Chandler would have been required to show that she sustained an "accidental injury . . . arising out of and in the course of [her] employment." Miss. Code Ann. § 71-3-3(b) (Rev. 2011). In addition, she would have been required to show that she experienced a temporary "disability," i.e., a temporary "incapacity because of [her] injury to earn the [same] wages . . . [she] was receiving at the time of [her] injury in the same or other employment." *Id.* § 71-3-3(i).

---

[3] *See also* 3 Ronald E. Mallen, Legal Malpractice § 21:1, at 4 (2020 ed.) ("If the injury occurred because of negligence in the handling of litigation, the measure of direct damages is the difference between the amount actually recovered or paid, and the amount that should have been recovered or paid."); David J. Meiselman, Attorney Malpractice: Law and Procedure § 4:2, at 57-58 (1980) ("Generally, the value of the lost claim is the true measure of damages. What the client would have recovered had it not been for the negligence of the attorney, is the customary rule." (footnote omitted)).

[4] Chandler made no claim for medical expenses, and she put on no evidence that she sustained any permanent disability.

¶19. In this case, there is sufficient evidence to support the trial judge's finding that Chandler had a viable claim for some amount of temporary disability benefits. As discussed above, Chandler, whose work history consisted primarily of manual labor, suffered a back and neck injury at work. As a result, her doctor restricted her to light-duty or sedentary work and prescribed at least one month of physical therapy in an effort to return her to work. Chandler testified that only three days after she was hurt, Cooper Tire laid her off because it had no light-duty or sedentary work available for her to do. This is sufficient evidence to support the trial judge's finding that Chandler experienced some degree of temporary disability that would have entitled her to some amount of benefits if the defendants had timely filed her workers' compensation claim.

¶20. Whether the proof is sufficient to support the award of $50,000 in compensatory damages is another matter. To recover temporary total disability benefits on her workers' compensation claim, Chandler would have been required to show that her injury was "such as to disqualify [her] for regular employment in the labor market," i.e., that she was "unable to obtain employment because of [her] physical condition." *Roling v. Hatten & Davis Lumber Co.*, 226 Miss. 732, 741, 85 So. 2d 486, 489 (1956) (quoting 2 Arthur Larson, The Law of Workmen's Compensation § 57.00 (1952)); *accord Univ. of Miss. Med. Ctr. v. Smith*, 909 So. 2d 1209, 1222 (¶45) (Miss. Ct. App. 2005). Furthermore, "[t]here is no presumption that temporary total disability continues indefinitely." *Cooper's Inc. of Miss. v. Long*, 224 So. 2d 866, 871 (Miss. 1969). In the alternative, to recover temporary partial disability benefits, Chandler would have been required to show that her "wage-earning capacity after

11

[her] injury in the same or other employment" was less than the wages she was earning prior to her injury.  Miss. Code Ann. § 71-3-21; *see also id.* § 71-3-3(i) (providing that "medical findings" are required to support "the extent" of the claimed disability).

¶21.    Chandler's evidence regarding the extent of her disability consisted of her own testimony and her medical records from March 22, 2008, to May 7, 2008.  Chandler testified that on March 21, 2008, she hurt her back and neck at work when another forklift struck her forklift from behind.  On March 22, she went to the emergency room because of pain in her back and neck.  On March 24 and March 26, she sought treatment from Dr. Clifton Storey.  Chandler's medical records show that Dr. Storey restricted her to light-duty or "sedentary" work and prescribed physical therapy.  As noted above, Chandler testified that she returned to work at Cooper Tire and did light-duty work for a few days before she was laid off because no more light-duty work was available.  Chandler saw Dr. Storey again on April 16, 2008.  Dr. Storey noted that she had been "fired from her job" since her injury and "currently [was] not working."  Dr. Storey's April 16 notes did not specifically mention work restrictions, but he directed Chandler to continue physical therapy.  Chandler attended physical therapy seven times between April 11 and May 7, 2008.  Her physical therapist's notes indicate a goal of returning to work by May 9.  Chandler testified, however, that she stopped going to physical therapy "[b]ecause they found out [she] was pregnant[,] and [she] could no longer do the exercise with physical therapy."  She also testified that no doctor had "ever clear[ed] her to go back to work full-time."  However, she offered no medical records or any other evidence to show that she ever obtained further treatment or saw any doctor

about her back following her last physical therapy session on May 7, 2008.

¶22.   Chandler also testified that she applied for work at "many places" in 2009 and 2010, although she did not testify whether she ever attempted to return to work at Cooper Tire. Chandler further testified as follows:

Q.     Did any of them hire you?

A.     Some did call me.  And due to my restriction, I was unable to stand for eight hours.

Q.     The restriction Dr. Storey placed on you?

A.     Yes.

Q.     So, you were still unemployed as of December of 2010?

A.     Yes.

Chandler testified that she now works as a substitute teacher, although she did not say when she started in that position.  She testified that she still has back pain "every now and then" but that her neck is fine now.  She did not say when her back pain subsided or when her neck pain stopped.

¶23.   Based on the foregoing evidence, Chandler's attorney argued that Chandler could have received temporary total disability benefits in the amount of sixty-six and two-thirds percent of her average weekly wage for a period of 144.6 weeks (March 21, 2010, to December 31, 2010).[5]  Chandler's attorney calculated that Chandler's average weekly wage

---

[5] *See* Miss. Code Ann. § 71-3-17(b) ("In case of [a temporary total] disability, . . . sixty-six and two-thirds percent (66-2/3%) of the average weekly wages of the injured employee, subject to the maximum limitations as to weekly benefits as set up in this chapter, shall be paid to the employee during the continuance of such disability . . . .").

13

at the time of her injury was $619.50 and, therefore, that her weekly benefit for temporary total disability would have been $412.59.[6]  The attorney then calculated that Chandler would have received total payments of $59,660 for a temporary total disability lasting 144.6 weeks. Chandler's attorney provided the judge with a single-page document setting out these calculations, which was marked for identification.  Chandler's attorney stated that Chandler was not seeking to recover for any medical expenses and asked the judge to award her $59,660 in compensatory damages.  The judge ultimately awarded Chandler compensatory damages of $50,000.  On appeal, the defendants argue that the trial judge's award is not supported by substantial evidence.  On this point, we agree with the defendants.

¶24.    As noted above, the proper measure of Chandler's damages is "the value of the claim lost," i.e., the amount Chandler would have recovered if the defendants had filed her claim within the statute of limitations.  *Thompson*, 186 So. 2d at 759.  The medical evidence that Chandler presented at trial shows, at most, that she experienced a temporary disability that continued for about seven weeks.  Chandler did not call any of her doctors or physical therapists to testify at trial but instead relied on medical records limited to a two-month time period.  Those records indicate a goal of returning Chandler to work after she completed a series of physical therapy sessions in May 2008, but Chandler stopped going to physical therapy.  Moreover, there is nothing in the record to show that Chandler remained under any work restrictions after May 2008.  Chandler testified that no "physical therapist or any doctor

_____

[6] This actually exceeds the maximum weekly benefit of $389.93 in effect on the date of Chandler's injury.  *See* Miss. Workers' Comp. Comm'n, Maximum Benefit Mileage/Rates Chart, https://mwcc.ms.gov/#/maximumBenefitMileageRatesChart (last visited Oct. 5, 2021).

ever clear[ed] [her] to go back to work full-time," but based on the evidence in the record, Chandler never saw a doctor or physical therapist after May 2008. Chandler further testified that she remained unemployed through the end of 2010, implying that her injury prevented her from returning to work for more than thirty-three months. However, as stated above, we cannot simply presume that Chandler's temporary disability continued indefinitely. *Long*, 224 So. 2d at 871. Rather, it was Chandler's burden to present evidence to support the extent and duration of her claimed disability.

¶25. For the foregoing reasons, we conclude that there is no substantial evidence to support the trial judge's finding that Chandler sustained $50,000 in compensatory damages. The judge's finding implies that Chandler could have obtained more than two years of temporary total disability benefits if the defendants had timely filed a petition to controvert Chandler's workers' compensation claim. However, the evidence in the record supports, at most, a finding that Chandler experienced a temporary partial or total disability for approximately two months. Therefore, the judge's finding regarding compensatory damages is clearly erroneous, and the case must be remanded for further proceedings and a determination of damages consistent with this opinion.

### B. The Partial Dissent

¶26. Chandler acknowledges that it was her burden to prove that her underlying workers' compensation claim would have been successful and the value of that lost claim. She argues that she offered sufficient evidence to support an "award of $50,000.00 in compensatory damages pursuant to the controlling Mississippi Workers' Compensation statutes." Chandler

15

does not argue that she sustained any other kind of compensatory damages or that there is any other measure of such damages. In short, she accepts her burden to prove the value of her underlying claim. For the reasons explained above, we conclude that the evidence is insufficient to support the award.

¶27. Whereas Chandler acknowledges the law applicable to her malpractice claim, Judge McCarty's partial dissent[7] argues that the compensatory damages award should be upheld on new theories not raised by Chandler. In short, the partial dissent argues that well-settled rules of law that govern legal malpractice claims do not apply to this case. We respectfully disagree, as there is nothing unique about the case that would except it from generally applicable doctrines.

¶28. The partial dissent relies heavily on *Lancaster v. Stevens*, 961 So. 2d 768 (Miss. Ct. App. 2007), a case in which a prisoner (Lancaster) sued his former attorneys after his federal habeas appeal was dismissed because the attorneys filed a noncompliant appellate brief. *Id.* at 769-70 (¶2). We held that Lancaster's malpractice claim failed as a matter of law because his underlying habeas claim was without merit. *Id.* at 771 (¶9). Therefore, Lancaster could not show that but for his attorneys' negligence, he would have been successful in the underlying action, i.e., the habeas appeal. *Id.*

¶29. We also held that Lancaster had a viable breach-of-contract claim. *Id.* at 771-72

---

[7] Presiding Judge Carlton has also written a partial dissent. Because Judge Carlton's opinion tracks the arguments made by Chandler, it is not necessary to address her opinion separately. We simply note our respectful disagreement for the reasons already discussed above in section II.A. For ease of reference, we hereafter refer to Judge McCarty's opinion as "the partial dissent."

16

(¶¶11-13). Lancaster had "paid [his attorneys] $10,000 for his habeas petition and federal appeals." *Id.* at 769 (¶2). We reasoned that he "paid $10,000 with the expectation that his attorneys would ensure the proper filing of his appeal," and we held that the attorneys' failure was a breach of contract. *Id.* at 772 (¶12). Therefore, we held that "the trial court erred in not submitting this issue to the jury for a determination of damages." *Id.* at (¶13).

¶30. The partial dissent's reliance on *Lancaster* is misplaced. In *Lancaster*, this Court simply recognized that a plaintiff in a breach-of-contract case can recover money paid for services that were never performed. Contrary to the partial dissent's arguments, we did not hold that Lancaster could recover damages based on some sort of subjective assessment of the "inherent value" of his habeas claim. *Post* at n.8. Furthermore, *Lancaster*'s holding regarding damages for breach of contract is irrelevant in this case because Chandler did not pay the defendants any money to file her claim. Not surprisingly, Chandler has never cited *Lancaster* or made any argument along these lines.

¶31. The partial dissent next emphasizes that a lawyer's failure to file suit within the statute of limitations may establish negligence as a matter of law and result in a directed verdict on the issue of liability. *Post* at ¶53. To borrow a line, "[t]hat is undoubtedly true, and undoubtedly irrelevant." *United States v. Jones*, 565 U.S. 400, 408 n.5 (2012). A directed verdict on liability does not establish damages and, indeed, has nothing to do with the proper measure of damages. In this very case, the circuit court granted partial summary judgment on the issue of liability and then proceeded to a trial at which Chandler was required to prove her damages. A plaintiff who obtains a directed verdict or summary

judgment on the issue of liability still must prove her damages. Contrary to the partial dissent's assertion, damages do not prove themselves. *Post* at ¶53.

¶32. Finally, the partial dissent argues that we have improperly "reduce[d] the damages in this case to a precise mathematical formulation of only the workers' compensation damages." *Post* at ¶55. But the "mathematical formulation" *is* Chandler's claim for damages. At trial, Chandler sought damages based on her own detailed calculations of the amount of workers' compensation benefits she allegedly could have recovered on her underlying claim. She presented no proof of any other kind of damages, and her attorney stated that she was "only claiming lost wages" (i.e., lost workers' compensation benefits). On appeal, she relies on the same calculations she offered at trial. Chandler's theory of her damages—the value of her lost claim—is consistent with the law governing legal malpractice cases. We simply hold that Chandler's calculations are not supported by substantial evidence—i.e., there is no evidence that she could have recovered anything approaching $50,000 on her underlying workers' compensation claim.

### III. The circuit court did not err by awarding punitive damages of $100,000 against Karriem.

¶33. The defendants' final argument on appeal is that the trial judge erred by not taking Karriem's net worth into consideration before awarding punitive damages against her. However, Karriem presented no evidence of her net worth during the punitive-damages phase of the trial or at any other time during the proceedings in the circuit court. Rather, she first raised this issue in a post-trial motion for a new trial and other relief. Even then, Karriem presented no evidence of her net worth but only made a brief, general request that the court

18

consider the issue.

¶34. Karriem waived this issue by failing to present evidence of her net worth during the punitive-damages phase of the trial. Mississippi Code Annotated section 11-1-65(1)(f)(ii)(3) (Rev. 2019) directs the trial judge to consider the defendant's financial condition and net worth before entering judgment for an award of punitive damages. In addition, section 11-1-65(3)(a)(vi) caps punitive damages at "[t]wo percent . . . of the defendant's net worth" when the defendant's net worth is $50,000,000 or less. However, "proof of net worth is not required to award punitive damages." *Woodkrest Custom Homes Inc. v. Cooper*, 108 So. 3d 460, 469 (¶41) (Miss. Ct. App. 2013) (citing *C & C Trucking Co. v. Smith*, 612 So. 2d 1092, 1102 (Miss. 1992)). Rather, "for a defendant to mitigate potential punitive damages, it is his responsibility to present proof of his net worth and financial condition." *Id.* at (¶42) (citing *C & C Trucking*, 612 So. 2d at 1105); *accord Coleman & Coleman Enters. Inc. v. Waller Funeral Home*, 106 So. 3d 309, 320 (¶33) (Miss. 2012). Moreover, the defendant must present "evidence . . . sufficient to enable the trial court to determine the defendant's current net worth, according to generally accepted accounting principles." *In re Miss. Medicaid Pharm. Average Wholesale Price Litig.*, 190 So. 3d 829, 846 (¶40) (Miss. 2015) (lead opinion). "A trial judge is not required to apply the punitive damages cap when, as in this case, the defendant presents absolutely no credible evidence to support its application." *Moore v. McDonald*, 210 So. 3d 563, 568 (¶16) (Miss. Ct. App. 2017); *accord Soffra v. Shieldsboro Dev. Inc.*, 314 So. 3d 129, 144-45 (¶60) (Miss. Ct. App. 2020). Therefore, Karriem waived this issue by failing to present evidence of her net worth in the trial court.

## CONCLUSION

¶35.   The trial court erred by granting partial summary judgment against Lairy on the issue of liability.   In addition, the trial judge's finding that Chandler sustained compensatory damages of $50,000 is not supported by substantial evidence and must be reversed.   We reverse and remand the case for further proceedings consistent with this opinion on those two issues.   We affirm the judgment of the trial court in other respects, including the award of punitive damages against Karriem.

¶36.   **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**BARNES, C.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR.  CARLTON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY McCARTY, J.  McCARTY, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON, P.J.**

**CARLTON, P.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶37.   I dissent only with respect to the majority's opinion in part II that the trial judge's $50,000 compensatory-damages award is not supported by substantial evidence.   In reviewing this issue, we must "afford[] deferential treatment" to a trial court's findings, *Univ. Med. Ctr. v. Martin*, 994 So. 2d 740, 746 (¶24) (Miss. 2008),  and, as the majority recognizes, in examining a trial court's findings we "must examine the entire record and must accept . . . evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact." *Id.* at 747 (¶26) (internal quotation marks omitted).  Based upon my review of the record, I find that it contains substantial credible and unrebutted

20

evidence of Chandler's on-the-job injury, related medical treatment, and the extent and duration of her disability sufficient to support of the trial court's $50,000 compensatory-damages award in this case. I therefore dissent on this particular issue only.

¶38. Chandler testified about how she was injured in the course and scope of her employment. While working as a tub operator at Cooper Tire, she was rear-ended by a moving forklift, which caused her to fall from her tub to the ground, resulting in injury. Chandler also testified that her wages as a tub operator were approximately $14.75 per hour, and she would work thirty-six hours one week, followed by a forty-eight-hour work week. The medical records admitted as evidence, as well as Chandler's testimony, show that she received medical treatment as a result of the injuries she sustained in the March 21 accident and that she was placed on sedentary work restrictions by Dr. Storey as of March 24, 2008. Upon her return visit to Dr. Storey on March 26, he prescribed physical therapy.

¶39. Chandler also testified that she returned to work at Cooper Tire performing secretarial duties, but she was terminated after only three days due to lack of work in that capacity. In accordance with Dr. Storey's orders, Chandler underwent physical therapy from April 2008 through May 2008. Chandler testified that physical therapy did not improve the condition of her neck and back pain and that her pain was similar to when she started the therapy. She testified that her physical therapy was discontinued when the facility discovered she was pregnant and could no longer do the prescribed exercises because of her pregnancy. Chandler confirmed in her testimony that neither Dr. Storey, her physical therapist, nor any other medical doctor ever cleared her to go back to work full-time.

21

¶40.   Although her back and neck continued to hurt her after her physical therapy was discontinued, Chandler testified that when she sought medical treatment following the birth of her child in October 2008, and into 2009, she was unsuccessful because she was told that her treatment was required to be handled through workers' compensation procedures. Chandler testified at trial that she retained Turner & Associates for this very reason: to assist her with the unfamiliar procedures of the workers' compensation system; but "her attorney never did take care of that [situation]," and she was unable to pursue medical attention.

¶41.   Even so, Chandler testified that in the time following her injury, 2009–2010, she actively looked for employment at "many, many places," and she listed a number of places in her testimony. She testified, however, that due to the work restrictions that Dr. Storey placed on her, she was not able to stand for eight hours, and she remained unemployed as of December 2010. She testified that as of the time of trial (June 2019) she was currently working as a substitute teacher and still experienced occasional back pain.

¶42.   Chandler's counsel also furnished the defense and the trial court a chart reflecting a calculation of lost-wage damages based upon temporary total disability benefits in the amount of sixty-six and two-thirds percent of her average weekly wage for a period of 144.60 weeks (March 21, 2008, to December 31, 2010), totaling $59,660, which was marked for identification at trial.

¶43.   At the close of Chandler's case-in-chief regarding compensatory damages, the defense declined the opportunity to call its own witnesses and present evidence. In short, the defense rested without offering any evidence rebutting or contrary to the evidence presented by

Chandler.

¶44. On the issue of compensatory damages, the trial judge found "that sufficient evidence exists here for many to conclude that [Chandler] would have, with competent legal counsel, obtained some workers' compensation benefits or settlements with Cooper Tire if they had been properly and timely pursued . . . . I . . . quantify that in the amount of $50,000 as compensatory damages."

¶45. I find that the record contains unrebutted substantial medical evidence and corroborative testimony supporting Chandler's underlying workers' compensation claim and, in turn, supporting the trial court's award of compensatory damages for the years 2008 through 2010 in the amount of $50,000. The trial court quantified the compensatory damages award as guided by the evidence before it and controlling Mississippi Workers' Compensation law. *See* Miss Code Ann. § 71-3-17(b) (Supp. 2012) (delineating calculation for temporary total benefits). Despite the lack of medical records after May 2008, I find that the trial judge could reasonably infer from Chandler's testimony that she was unable to work for the approximately two years following her on-the-job injury, particularly in light of her testimony that she was effectively prohibited from obtaining additional medical treatment or evaluation due to her lawyers' failure to pursue her workers' compensation claim in the first place. For these reasons and in applying the deferential standard of review applicable here, I would affirm the trial court's award of $50,000 in compensatory damages. Accordingly, I respectfully dissent only as to the majority's opinion regarding this matter within part II.

**McCARTY, J., JOINS THIS OPINION.**

23

**McCARTY, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶46.    Because the majority's reversal of the compensatory damages verdict conflicts with precedent from this Court and fails to recognize the losses suffered by the plaintiff, I respectfully dissent in part.  In minimizing Ms. Chandler's loss to solely the value of her underlying workers' compensation claim, the Court does not acknowledge the fraud perpetrated on her over a number of years, the violation of ethical rules during this fraud, the abdication of the duty of lawyers to pursue a claim, or her loss of something she can never get back—the hope that the Court system will make her whole.

¶47.    In her amended complaint, which generally sounded in negligence, the plaintiff further emphasized damages she had suffered from misrepresentation and fraud.  After asserting she had "hired" the law firm, Ms. Chandler repeatedly intoned she had "relied to her detriment upon the misrepresentation of the Defendants."   She stated they acted "falsely and fraudulently, with the intent to deceive" her, and they lied to her about the status of her case.  Based upon these claims, in her amended complaint Ms. Chandler asked for $250,000 in compensatory damages and $1,000,000 in punitive damages.

¶48.    I find prior precedent from our Court to be instructive.  One Jimmy Lancaster had claimed legal malpractice "against his attorneys for mishandling the appeal of his conviction of capital murder." *Lancaster v. Stevens*, 961 So. 2d 768, 769 (¶1) (Miss. Ct. App. 2007).  After his conviction, he "paid $10,000 [to his attorneys] for his habeas corpus motion and federal appeals." *Id*.  The petition failed and was appealed, but the brief to the Fifth Circuit "was filed in an improper form and the court advised Lancaster's attorneys that unless the

24

error was corrected the appeal would be dismissed." *Id*. at 769-70 (¶2). The lawyers failed to correct the error, and the federal court ultimately "dismissed Lancaster's appeal for failure by his attorneys to prosecute" after the brief was struck. *Id*. at 770 (¶2).

¶49. The lawyers failed to communicate this to the inmate and subsequently would not send him his case file. *Id*. at 770 (¶3). The inmate ended up filing a lawsuit pro se "for legal malpractice and breach of contract" against the lawyers; the state trial court granted summary judgment "finding that Lancaster failed to meet the burden of proof for legal malpractice." *Id*. at 770 (¶4).

¶50. Our Court of Appeals unanimously reversed in part. *Id*. at 774 (¶22). We found that "[t]he issue of legal malpractice is without merit," but "the trial judge erred in failing to address the remaining issues before the court." *Id*. at 771 (¶10). Since "Lancaster paid $10,000 with the expectation that his attorneys would ensure the proper filing of his appeal," even if the lawyers "felt the appeal to the Fifth Circuit was futile, they still undertook the appeal and accepted payment"—and in doing so incurred a duty. *Id*. at 772 (¶12).

¶51. We found that "[a]n attorney who abandons an appeal without informing his client or being properly relieved by the court of record is guilty of breaching an **implied** contractual duty." *Id*. (emphasis added). "As it was undisputed that Lancaster's attorneys breached their contractual duties, the trial court erred in not submitting this issue to a jury for a determination of damages," we concluded, adding that "[t]he jury should also consider whether punitive damages are warranted." *Id*. at 772 (¶13).

¶52. In reaching this unanimous conclusion, we relied upon an ethics case from the

25

Mississippi Supreme Court. *Id*. There, the Court held:

> We take this occasion to announce to the bench and bar and the state of Mississippi at large that any time an attorney undertakes to represent a client in any court of record in this state that there attaches at that moment a legal, ethical, professional and moral obligation to continue with that representation until such time as he is properly relieved by the court of record before whom he has undertaken to represent a client.

*Myers v. Miss. State Bar*, 480 So. 2d 1080, 1092 (Miss. 1985). In finding that all attorneys have "an implied contractual duty" in representing their clients, our Court of Appeals recognized *Myers*' finding that the attorney-client relationship is not a mere phantom, but a concrete relationship that has weight and meaning, because it involves the property of the client. *Lancaster*, 961 So. 2d at 772.[8]

¶53. The cases of *Lancaster* and *Myers* both recognize that lawyers owe multiple duties to clients, and those duties are critical to a functioning judicial system. Indeed, these duties are so key that the Mississippi Supreme Court has repeatedly held that an "attorney's failure to file suit prior to the expiration of the statute of limitations constituted negligence as a matter of law," and so "the plaintiff is entitled to a directed verdict on liability" when there is such a failure. *Byrd v. Bowie*, 933 So. 2d 899, 904 (¶16) (Miss. 2006) (citation and internal

---

[8] And there is no doubt that the lawsuit itself is property. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982) ("[A] cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause."). "The Court traditionally has held that the Due Process Clauses protect civil litigants who seek recourse in the courts, either as defendants hoping to protect their property or as plaintiffs attempting to redress grievances." *Id*. at 429. Quoting *Zimmerman*, the Mississippi Supreme Court has also recognized that "[i]t is without question that a cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause' of the federal constitution." *Albert v. Allied Glove Corp*., 944 So. 2d 1, 6 (¶16) (Miss. 2006). There is therefore an inherent value to any litigant's case.

quotation marks omitted). This breach of an attorney's duty is so colossal that "it does not require expert testimony to establish the negligence of an attorney who is ignorant of the applicable statute of limitations or who sits idly by and causes the client to lose the value of his claim for relief." *Id*. at 905 (¶17) (alteration, citation, and internal quotation marks omitted); *see also Pierce v. Cook*, 992 So. 2d 612, 618 (¶16) (Miss. 2008) (quoting the same principle). The loss is so severe it effectively *proves itself*.

¶54. Ms. Chandler hired a law firm to represent her once she had suffered a loss. The plaintiff in *Lancaster* sought exoneration through appeal; Ms. Chandler sought damages for her work-related injury. In both cases, the lawyers failed to do what they promised they would do—legal work to achieve the client's stated goal. The parties in this case never produced a contract, but as in *Lancaster* the defendants flatly admitted they failed to do what they were hired to do; and Ms. Chandler stated in her amended complaint that she "hired" the law firm to pursue her claims. She lost something more than just a check from Cooper Tire's workers' compensation carrier.

¶55. It is well settled that "in computation of damages a person is to be made whole, or complete satisfaction is to be made, or he *is to recover the value of the property destroyed*; it is never contemplated that the injured party should realize a profit from the damages sustained." *Ballard Realty Co. v. Ohazurike*, 97 So. 3d 52, 63 (¶24) (Miss. 2012) (emphasis added) (citation and internal quotation mark omitted). And in the end, "[t]he amount of damages is a question for the jury," or as in this case, to a judge sitting as factfinder. *Downs v. Ackerman*, 115 So. 3d 785, 790 (¶16) (Miss. 2013). While the majority would reduce the

27

damages in this case to a precise mathematical formulation of only the workers' compensation damages, this misses that point that Lorie Chandler was deprived of the "legal, ethical, professional and moral obligation" her lawyers had to represent her in her workers' compensation action.

¶56.    Given that we know her lawsuit itself is a type of property, and given the untold lies and fraud perpetrated on her over a series of years—including promises of a six-figure settlement—and given her complaint's broad invocation of fraud, falsity, and misrepresentation, the compensatory damages award was warranted.  Because the damages were supported by substantial evidence, I fully join Presiding Judge Carlton's well-reasoned opinion, and I also respectfully dissent in part.

**CARLTON, P.J., JOINS THIS OPINION.**